MANNING v CITY OF HAZEL PARK

Docket No. 134556. Submitted March 2, 1993, at Detroit. Decided December 6, 1993, at 10:05 A.M. Leave to appeal sought.

Marilyn S. Manning brought an action in the Oakland Circuit Court against the City of Hazel Park and the city's mayor and mayor pro tempore, alleging violation of her right to due process, wrongful discharge from her employment as city manager, and sex and age discrimination. The court, John N. O'Brien, J., granted summary disposition for the defendants. The plaintiff appealed.

The Court of Appeals *held:*

1. A wrongful discharge claim based on *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579 (1980), is applicable to public sector employees.

2. The individual defendants, through certain alleged oral promises, could not bind the city to an implied employment contract with the plaintiff terminable for just cause only. The city charter did not give them the power to bind the city.

3. The city charter creates an unequivocal at-will employment policy with regard to the position of city manager. Language in the city code regarding just cause for termination does not clearly and unambiguously apply to the city manager, and the combined statements are not reasonably capable of being interpreted as promises to discharge only for just cause. The dismissal of the wrongful discharge claim was proper.

4. Because the plaintiff was an at-will employee, she had no property right to continued employment and the defendants did not have to afford her procedural due process when she was terminated.

5. Statements by the defendants did not deprive the plaintiff of her liberty interest in her good name, reputation, and future

REFERENCES

Am Jur 2d, Job Discrimination §§ 1091, 2349-2353; Municipal Corporations, Counties, and Other Political Subdivisions § 275; Public Officers and Employees § 8; Wrongful Discharge §§ 6, 96.

Right to discharge allegedly "at-will" employee as affected by employer's promulgation of employment policies as to discharge. 33 ALR4th 120.

employment. The plaintiff's claims of deprivation of her property interest in continued employment and deprivation of her liberty interest in her good name, reputation, and future employment properly were dismissed because there is no material factual dispute regarding the claims.

6. The trial court erred in dismissing the claims of sex and age discrimination. The plaintiff clearly established a prima facie case of age and sex discrimination under an intentional discrimination theory.

7. A juror reasonably could believe that the plaintiff was constructively discharged by the defendants. Despite the fact that she officially retired, a juror could believe that she was forced into an involuntary retirement.

8. The plaintiff presented sufficient evidence proving that the defendants' legitimate, nondiscriminatory reasons for the discharge were a pretext. The evidence clearly raises a genuine issue of material fact regarding whether the defendants discriminated against the plaintiff on the basis of age and sex.

9. The defendants are precluded from claiming governmental immunity with regard to the plaintiff's sex and age discrimination claims.

10. The grant of summary disposition with regard to the claims of wrongful discharge and violations of due process was proper. The grant of summary disposition with regard to the sex and age discrimination claims was improper.

Affirmed in part, reversed in part, and remanded.

1. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — WRONGFUL DISCHARGE — PUBLIC EMPLOYEES.

A wrongful discharge claim based on *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579 (1980), is applicable to public sector employees.

2. MUNICIPAL CORPORATIONS — CONTRACTS — CITY COUNCIL MEMBERS — CITY OFFICIALS.

Generally, no officer or board, other than the common council, has the power to bind a municipal corporation by contract; municipal officers may bind a municipality only if they are empowered to do so by the municipal charter.

3. MASTER AND SERVANT — PUBLIC EMPLOYMENT — PROPERTY INTERESTS — DUE PROCESS.

A public employee does not have a property interest in continued employment where the position is held at the will of the employee's supervisors and the employee has not been promised termination only for just cause; a public employer need not

comply with procedural due process in terminating the employment interest of a public employee unless the employee has a property right in that interest; public employment in and of itself is not a property interest.

4. Due Process — Liberty Interests — Reputation — Public Employees.

Reputation may constitute a liberty interest sufficient to invoke the protection of the Due Process Clause where it is connected with a more tangible interest such as employment; to establish a liberty interest in reputation and future public employment, an employee must show conduct of the governmental employer that might seriously damage the employee's standing and associations in the community or that imposes a stigma or other disability that denies the employee the freedom to take advantage of other employment opportunities (US Const, Am XIV).

5. Master and Servant — Constructive Discharge.

A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.

6. Civil Rights — Governmental Immunity — Employers.

The Civil Rights Act specifically includes the state and political subdivisions and their agents as employers covered by the act; governmental immunity is not a defense to a claim brought under the Civil Rights Act against such employers (MCL 37.2103[g],[h], 37.2201[a]; MSA 3.548[103][g],[h], 3.548[201][a]).

*Stark & Gordon* (by *Deborah L. Gordon*), for the plaintiff.

*Brady Hathaway, P.C.* (by *Thomas M.J. Hathaway*), for the defendants.

Before: CAVANAGH, P.J., and GRIFFIN and JANSEN, JJ.

JANSEN, J. Plaintiff appeals as of right from an order of the Oakland Circuit Court granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm in part, reverse in part, and remand for further proceedings.

This case involves claims of violation of due process, wrongful discharge, and sex and age discrimination. Plaintiff Marilyn Manning was hired by defendant City of Hazel Park in August 1961. She was promoted to deputy city clerk on October 10, 1977, and promoted to city clerk on October 25, 1977. She was then appointed acting city manager/city clerk on January 13, 1986, when the city council voted to terminate former City Manager Dan Potter. She became city manager/city clerk on March 10, 1986.

In November 1987, defendant Michael Binkley was elected mayor and defendant James McGough was elected mayor pro tempore. On February 8, 1988, the positions of city manager/city clerk were split by the city council and plaintiff was relieved of her duties as city clerk, but she remained in the position of city manager. The city council also reduced plaintiff's salary by $5,012 to the two-year level of the 1985-86 administrative employees' salary schedule.

On February 22, 1988, Binkley and McGough met with plaintiff. Plaintiff claims that they informed her that the city council believed she was drawing a higher salary than the amount approved and that she must resign, retire, or face immediate removal. Plaintiff allegedly asked for time to prepare for a hearing before the city council, but Binkley and McGough refused this request and informed plaintiff that the city council had already agreed to remove her. Plaintiff then chose to retire because her pension benefits would be affected if she resigned or was terminated and she would automatically lose her accumulated sick leave and vacation time if she was terminated.

After her retirement, plaintiff requested a hearing before the city's personnel advisory board, which was denied. The city council appointed

Mitch Bobowski, a male in his thirties, as interim city manager. In April 1989, the city council appointed James Stump, a thirty-five-year-old male, as city manager. Stump was given a salary of $56,000 a year, while plaintiff's salary had been approximately $54,400 a year at her retirement.

Plaintiff filed a three-count complaint on March 27, 1989, alleging violation of due process, wrongful discharge, and sex and age discrimination. Defendants filed a motion for summary disposition, which the trial court granted in an order dated October 24, 1990.

I

A

Plaintiff first argues that the trial court erred in granting summary disposition of all her claims pursuant to MCR 2.116(C)(10). A motion for summary disposition pursuant to MCR 2.116(C)(10) may be granted when, except with regard to the amount of damages, there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. Such a motion tests the factual basis of the claim. A court reviewing the motion must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence in favor of the nonmoving party and grant the benefit of any reasonable doubt to the opposing party. *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). The opposing party may not rest upon mere allegations or denials in the pleadings but must, by affidavit or other documentary evidence, set forth specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4). The court may not make factual findings or weigh credibility in deciding a motion for summary disposition. *Featherly v Teledyne*

*Industries, Inc,* 194 Mich App 352, 357; 486 NW2d 361 (1992). Thus, this Court examines the facts of this case in a light most favorable to plaintiff. *Radtke, supra.*

**B**

Before deciding the merits of plaintiff's wrongful discharge claim, we must first decide if a wrongful discharge claim based on *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), is applicable to public employees. This question has not yet been conclusively decided.

In other cases, this Court has implicitly found *Toussaint* to be applicable to public employees. *Dudkin v Civil Service Comm,* 127 Mich App 397; 339 NW2d 190 (1983); *Vander Toorn v Grand Rapids,* 132 Mich App 590; 348 NW2d 697 (1984); *Rasch v East Jordan,* 141 Mich App 336; 367 NW2d 856 (1985). However, this question is clearly unsettled. See *Engquist v Livingston Co,* 139 Mich App 280; 361 NW2d 794 (1984); *Matulewicz v Governor,* 174 Mich App 295; 435 NW2d 785 (1989).

We believe, and now definitively hold, that a wrongful discharge claim based on *Toussaint* is applicable to public employees. We believe that our holding is supported by *Toussaint,* which relied in part on *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972). In *Perry,* the United States Supreme Court clearly approved the concept of a constitutionally protected interest in continued employment based on an implied contract where the plaintiff was employed by a state college. Such an implied contract may be based on stated employer policies and established procedure. *Toussaint, supra,* pp 617-618.

Accordingly, a wrongful discharge claim based

on *Toussaint* is applicable to public sector employees.

C

Next, we must decide if defendants Binkley and McGough, through certain alleged oral promises, could bind the city to an implied employment contract terminable for just cause only. Plaintiff claims that Binkley and McGough told her, at the time that the city manager and city clerk positions were separated, that she was their choice for city manager as long as she continued to perform.

The city's charter provides that the city manager shall hold office by virtue of appointment by the city council. The city council also sets the city manager's salary and the city manager holds office at the pleasure of the council. Hazel Park Charter, ch VI, § 6.1(b).

Binkley and McGough, as mayor and as mayor pro tempore respectively, were not city council members and could not, through any oral promises, bind the city to an employment contract with plaintiff. Generally, no officer or board, other than the common council, has the power to bind the municipal corporation by contract. *Johnson v Menominee,* 173 Mich App 690, 694; 434 NW2d 211 (1988). Further, individual city council members have no power to bind the municipality. *Id.* Rather, municipal officers can bind a municipality only if they are empowered to do so by the city charter. *Rasch, supra.* Here, the city charter did not give the mayor and mayor pro tempore the power to bind the municipality individually.

Accordingly, Binkley and McGough had no authority to bind the city to an employment contract with plaintiff.

D

However, we must still determine if plaintiff had an employment contract terminable for just cause only through written employment policies and procedures. Employment contracts for an indefinite duration are presumptively terminable at the will of either party. *Lynas v Maxwell Farms,* 279 Mich 684, 687; 273 NW 315 (1937). To overcome the presumption of employment at will, a party must present sufficient proof of either a contractual provision for a definite term or a provision forbidding discharge in the absence of just cause. *Rowe v Montgomery Ward & Co, Inc,* 437 Mich 627, 636; 473 NW2d 268 (1991).

There are two alternative theories of enforceability that may support a claim of wrongful discharge. The first theory is grounded in contract principles. The contract theory is proved by the existence of an express agreement, oral or written. *Toussaint, supra,* p 598. The second theory is termed the legitimate expectations theory and is based on the employee's legitimate expectations of continued employment absent just cause for termination arising out of the employer's policies and procedures. *Id.*

Pursuant to Chapter VI, § 6.1(b) of the Hazel Park Charter, the city manager is an at-will employee:

> The City Manager shall hold office by virtue of appointment by the Council, which body shall also set his/her salary. He/she shall hold office at the pleasure of the Council. The City Clerk, City Treasurer, City Assessor, and City Attorney shall be appointed by the City Manager with the approval of the Council, which body shall set the salaries for such officers.

However, pursuant to the Hazel Park City Code, § 2.72.080, the city's civil service employees are divided into classified and unclassified positions, under which the city manager is unclassified. Section 2.72.260 of the city code provides:

> The appointing authority may dismiss any employee for inefficiency, insubordination, lack of cooperation, habitual tardiness, or other just cause for the good of the service.
> The personnel advisory board shall be notified of the dismissal and the reasons therefor.

Plaintiff claims that the conflict between the city charter provision and the city code provision creates a legitimate expectation that plaintiff was covered by the just-cause provision of the city code and that she therefore had an implied contract providing for discharge for just cause only. We disagree with plaintiff.

The city charter clearly and unambiguously applies to the city manager and provides that the city manager holds office at the pleasure of the city council. Accordingly, the charter creates an unequivocal at-will employment policy with regard to the city manager. Further, the city code does not clearly and unambiguously apply to plaintiff and, although the city code contains just-cause language, we do not believe that the combined statements are reasonably capable of being interpreted as promises to discharge only for just cause. *Rood v General Dynamics Corp,* 444 Mich 107, 127; 507 NW2d 591 (1993). Accordingly, we hold that the city charter provides for at-will employment with regard to the city manager position and that the wrongful discharge claim was properly dismissed by the trial court.

## II

### A

Plaintiff next argues that she had a property interest in continued employment with the city. Plaintiff also claims that she was deprived of her liberty interest in reputation, good name, and future employment. Plaintiff's claim in this regard is premised upon 42 USC 1983 and Const 1963, art 1, § 17 for the deprivation of constitutionally protected liberty and property interests.

A public employee does not have a property interest in continued employment when the position is held at the will of the employee's superiors and the employee has not been promised termination only for just cause. *Bishop v Wood,* 426 US 341; 96 S Ct 2074; 48 L Ed 2d 684 (1976); *Johnson, supra,* pp 695-696. Therefore, a public employer need not comply with procedural due process in terminating an employment interest unless the public employee has a property right in that interest. *Id.,* p 695. A property right comes from a contract or statute. Public employment in and of itself is not a property interest automatically entitling the employee to procedural due process. *Perry, supra.*

Because plaintiff was an at-will employee, she had no property right to continued employment and defendants did not have to afford her procedural due process when she was terminated. *Johnson, supra,* p 696.

### B

Plaintiff also argues that she was deprived of her liberty interest in her good name, reputation, and future employment. A person's good name, reputation, honor, and integrity are among the

liberty interests protected by the Due Process Clause of the Fourteenth Amendment. *Bd of Regents of State Colleges v Roth,* 408 US 564; 92 S Ct 2701; 33 L Ed 2d 548 (1972). Reputation may constitute a liberty interest sufficient to invoke the protection of the Due Process Clause when it is connected with a more tangible interest such as employment. *Paul v Davis,* 424 US 693; 96 S Ct 1155; 47 L Ed 2d 405 (1976). To establish a liberty interest, the employee must show conduct of the governmental employer that might seriously damage the employee's standing and associations in the community or that imposes a stigma or other disability that denies the employee the freedom to take advantage of other employment opportunities. *Roth, supra.*

Plaintiff claims that she was deprived of her liberty interest in her reputation and future employment when defendants charged her with dishonest salary manipulation, terminated her without notice or a hearing, and maligned her in the press. It was publicized in the Oakland County Daily Tribune on February 23, 1988, that the city council had forced plaintiff into an early retirement. Binkley was quoted in the article as saying that a report from plaintiff turned up "some things we did not care for" and that they were unhappy with the report. An article printed in the same newspaper on May 5, 1989, quoted Binkley as saying that the city council "could have done a good hatchet job on Manning but we didn't. We had good reason, we exercised our right and let it go at that."

We do not believe that such statements amount to a deprivation of plaintiff's liberty interest in her good name, reputation, and future employment. The conduct does not rise to the level of seriously damaging plaintiff's standing and associations in

the community, nor does the conduct impose a stigma or disability denying plaintiff the freedom to take advantage of other employment opportunities.

Accordingly, plaintiff's claims of deprivation of her property interest in continued employment and deprivation of her liberty interest in her good name, reputation, and future employment were properly dismissed because there is no material factual dispute regarding these claims.

### III

Plaintiff next argues that the trial court erred in dismissing her claims of sex and age discrimination. We agree.

Plaintiff's claims are premised upon the Civil Rights Act, which prohibits discharge from employment on the basis of sex and age. MCL 37.2202(1)(a); MSA 3.548(202)(1)(a). The allocation of the burden of proof in discrimination cases is (1) the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination; (2) if the plaintiff is successful in proving a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions; (3) the plaintiff then has the burden of proving by a preponderance of the evidence that the legitimate reason offered by the defendant was merely a pretext. *Featherly, supra,* p 358.[1]

A prima facie case of discrimination can be made by proving either intentional discrimination or disparate treatment. *Reisman v Regents of*

---

[1] The allocation of the burden of proof in title VII employment discrimination cases has recently been reviewed by the United States Supreme Court in *St Mary's Honor Center v Hicks,* 509 US —; 113 S Ct 2742; 125 L Ed 2d 407 (1993).

*Wayne State Univ,* 188 Mich App 526, 538; 470 NW2d 678 (1991). To prove intentional discrimination, the plaintiff must show that she was a member of the affected class, that she was discharged, and that the person discharging her was predisposed to discriminate against persons in the affected class and actually acted on that disposition. *Id.* To prove intentional discrimination for age discrimination, the plaintiff must show (1) she was a member of a protected class, (2) she was discharged, (3) she was qualified for the position, and (4) she was replaced by a younger person. *Matras v Amoco Oil Co,* 424 Mich 675, 683; 385 NW2d 586 (1986). To prove disparate treatment, the plaintiff must show that she was a member of a class entitled to protection under the act and that she was treated differently than persons of a different class for the same or similar conduct. *Reisman, supra,* p 538.

Plaintiff has clearly established a prima facie case of age and sex discrimination under the intentional discrimination theory. Plaintiff was a fifty-six-year-old woman when she was discharged. She was a highly qualified city employee who had twenty-six years of experience working for the city. Plaintiff was replaced by a thirty-five-year-old white male. Further, we find that a juror could reasonably believe that plaintiff was constructively discharged by defendants, despite the fact that she officially retired.

A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation. *Hammond v United of Oakland, Inc,* 193 Mich App 146, 151; 483 NW2d 652 (1992). Plaintiff claims that defendants Binkley and McGough approached her with their "findings" of her unapproved salary and

offered her the choice of retiring, resigning, or facing the city council that evening. Binkley and McGough also allegedly told plaintiff that the council had already agreed to remove her at the meeting to be held in the evening. Plaintiff claims that she chose to retire because her pension and retirement benefits would have been affected if she had been discharged. Under these circumstances, a juror could reasonably believe that plaintiff was forced into an involuntary retirement.

Defendants claim that plaintiff was discharged because the city council was not satisfied with her performance at the city council meetings and because plaintiff awarded herself unauthorized pay raises from 1986 to 1988. However, we find that plaintiff has presented sufficient evidence proving that defendants' legitimate, nondiscriminatory reasons for the discharge were a mere pretext.

Plaintiff claims that Binkley and McGough told her that her salary was designed for a man. The city council interviewed sixteen people for the city manager position, all of whom were male. Plaintiff has also offered other documentary evidence that defendants were soliciting applications for the city manager position before they discovered the unauthorized salary increases. Further, the man who replaced plaintiff was given a starting salary of $56,000 a year, which was more than plaintiff's final salary of $54,487 a year. This evidence clearly raises a genuine issue of material fact regarding whether defendants discriminated against plaintiff on the basis of age and sex.

Accordingly, the trial court erred in granting defendants' motion for summary disposition with regard to the sex and age discrimination claims. Plaintiff established a prima facie case of sex and

age discrimination and presented sufficient evidence to prove that defendants' reasons for discharging her were a mere pretext.

IV

Finally, plaintiff argues that defendants Binkley and McGough are precluded from claiming governmental immunity with regard to any of her claims. Although this issue was not addressed by the trial court, we may still review this issue because it involves a question of law and the facts necessary for its resolution have been presented. *Gillette Co v Dep't of Treasury,* 198 Mich App 303, 311; 497 NW2d 595 (1993).

Because we have affirmed the grant of summary disposition with regard to the claims of wrongful discharge and deprivation of property and liberty rights, we need not address this defense with regard to those claims. Concerning the sex and age discrimination claims, defendants do not have a governmental immunity defense because the Civil Rights Act specifically includes state and political subdivisions and their agents as employers covered by the act. MCL 37.2103(g), (h); MSA 3.548(103)(g), (h); MCL 37.2201(a); MSA 3.548(201)(a). Governmental immunity is not a defense to a claim brought under the Civil Rights Act.

Accordingly, we affirm the trial court's grant of summary disposition with regard to the claims of wrongful discharge and due process violations. We reverse the trial court's grant of summary disposition with regard to the sex and age discrimination claims, and we remand for further proceedings consistent with this opinion. We do not retain jurisdiction.