# STATE OF MICHIGAN

# COURT OF APPEALS

---

TODD BOWEN,

      Plaintiff-Appellant,

v

ALPENA REGIONAL MEDICAL CENTER,

      Defendant-Appellee.

UNPUBLISHED
January 16, 2018

No. 334620
Alpena Circuit Court
LC No. 16-007049-CZ

---

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

This lawsuit involves claims under the Whistleblowers' Protection Act, MCL 15.361 *et seq.*, the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, and the Public Health Code, MCL 333.1101 *et seq.* Plaintiff appeals as of right from the trial court's opinion and order granting summary disposition in favor of defendant with regard to his amended complaint under MCR 2.116(C)(10). Plaintiff also challenges an earlier opinion and order that granted summary disposition in defendant's favor with respect to plaintiff's original complaint. Because plaintiff may be able to establish that he was constructively discharged and discovery has not yet commenced, we vacate the trial court's grant of summary disposition and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiff was employed by defendant for approximately five years. This relationship ended on November 25, 2015. According to plaintiff, on that day, Diane Shields, defendant's Vice President of Human Resources, prepared a disciplinary correction form stating that plaintiff's employment would be terminated due to plaintiff's failure to follow job duties, excessive absence from work, and failure to treat others with courtesy and respect. Shields, plaintiff, and a representative of plaintiff's union met that day to discuss the situation. Shields informed plaintiff that his employment would be terminated. Shields, however, offered plaintiff a choice. Defendant could terminate plaintiff, and plaintiff could pursue whatever remedies may be available to him through the grievance process of the applicable collective bargaining agreement, or plaintiff could resign. According to plaintiff, defendant offered two inducements to cause plaintiff to resign: (1) defendant would not challenge plaintiff if he sought unemployment benefits, and (2) defendant would not disclose the reasons for his discharge to

potential future employers. Plaintiff chose to resign, and signed a termination agreement that stated the following:

> **Resignation**: My resignation from Alpena General Hospital is voluntary. I am aware [sic] applicable Hospital policies and procedures, as well as what rights I may have under a union contract, and hereby waive any and all of those rights/processes I may have, including the right to contest or grieve this or any employment action in accordance with that union contract.

Approximately three months later, plaintiff filed the instant suit. Plaintiff alleged that his "termination" was the culmination of years of harassment suffered at the hands of plaintiff's supervisor and other employees following plaintiff's reporting of another employee's workplace misconduct in August 2012. This employee was terminated for that misconduct, and in litigation that followed, plaintiff provided deposition testimony detailing the employee's misconduct. Plaintiff also alleged that he was coerced into signing the termination agreement by "threats" made by Shields at the November 25, 2015 meeting. Plaintiff characterized the offers made by Shields not so much as inducements, but rather, as threats; plaintiff explained that Shields threatened to challenge any unemployment claims and to disparage his reputation to future potential employers if defendant did not resign.

Before any discover, defendant initially moved for summary disposition under MCR 2.116(C)(7). Defendant argued that the termination agreement served as a waiver of the claims brought by plaintiff in this suit. Defendant also contended that all of plaintiff's claims hinged on his ability to demonstrate that he was discharged from his employment by defendant, and that the termination agreement plainly demonstrated that it was plaintiff's choice to resign. Plaintiff responded by arguing that the termination agreement only waived his rights under the CBA and other internal procedures—not the statutory claims at issue in this suit. Plaintiff further argued that his resignation was not truly a resignation; rather, he was constructively discharged.

Ruling on this first motion, the trial court concluded that the termination agreement served as a waiver of any and all possible claims plaintiff could have against defendant, including the statutory claims brought by plaintiff in this suit. The trial court, however, asked plaintiff to file an amended complaint fleshing out his constructive discharge theory.

Plaintiff did so, and defendant again moved for summary disposition, this time under MCR 2.116(C)(7) and (C)(10). Defendant argued that by waiving his claims, as the trial court had already concluded, plaintiff's complaint necessarily failed, and summary disposition should be entered pursuant to MCR 2.116(C)(7). Defendant then turned to the constructive discharge issue. Defendant argued that summary disposition was appropriate pursuant to MCR 2.116(C)(10) because plaintiff signed an agreement stating that his resignation was voluntary. Defendant argued that regardless of what evidence plaintiff could present, this agreement was binding and precluded plaintiff from proving anything inconsistent with the agreement's terms.

In a written opinion, the trial court characterized plaintiff's argument regarding constructive discharge as an argument that plaintiff was under duress when he signed the termination agreement. The trial court explained that if plaintiff could prove duress, plaintiff

could avoid the agreement. The trial court, however, found that plaintiff could not prove duress, and thus, granted summary disposition in favor of defendant. This appeal followed.

## II. ANALYSIS

"We review de novo a trial court's ruling on a motion for summary disposition. Similarly, whether contract language is ambiguous is a question of law that we review de novo. Finally, the proper interpretation of a contract is also a question of law that we review de novo." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003) (internal citations omitted).

Defendant's first motion was brought under MCR 2.116(C)(7). Summary disposition is appropriate under MCR 2.116(C)(7) when the claim is barred by a release of liability. "When it grants a motion under MCR 2.116(C)(7), a trial court should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *McLain v Lansing Fire Dep't*, 309 Mich App 335, 340; 869 NW2d 645 (2014).

Defendant brought its second motion under MCR 2.116(C)(7) as well as MCR 2.116(C)(10). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016).

*The Termination Agreement Did Not Cover Statutory Claims.* Plaintiff first argues that the trial court erred when it found that the waiver in the termination agreement covered the claims raised in this suit. As this Court explained in *Gortney v Norfolk & W R Co*, 216 Mich App 535, 540-541; 549 NW2d 612 (1996):

> The scope of a release is controlled by the intent of the parties as it is expressed in the release. If the text in the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release. The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity. A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. If the terms of the release are unambiguous, contradictory inferences become subjective, and irrelevant, and the legal effect of the language is a question of law to be resolved summarily. [internal citations and quotation marks omitted.]

Plaintiff argues that the circuit court's conclusion that the termination agreement constituted a release of all of his noncontractual claims against defendant was erroneous. Again, the clause states in its entirety:

> **Resignation**: My resignation from Alpena General Hospital is voluntary. I am aware [sic] applicable Hospital policies and procedures, as well as what rights I may have under a union contract, and hereby waive any and all of those

rights/processes I may have, including the right to contest or grieve this or any employment action in accordance with that union contract.

After the first sentence, which declares that plaintiff's resignation is voluntary, the language of the agreement explains that plaintiff is aware of specific "Hospital policies and procedures" and "rights [he] may have under a union contract." The contractual language goes on to explain that plaintiff is waiving "any and all of *those rights/processes* [he] may have, including the right to contest or grieve this or any employment action in accordance with that union contract." (Emphasis added.)

The language is unambiguous. Plaintiff waived only certain rights and processes—"those rights/processes"—by signing the agreement. The specific rights and processes he waived were explained in the preceding clause: "applicable Hospital policies and procedures, as well as what rights [he] may have under a union contract." Plaintiff did not waive the right to pursue statutory remedies separate from any claim based on hospital policies or procedures or rights under a CBA. Had the parties so intended, they could have included broader language, but they did not. We are bound by the plain language of the termination agreement, which does not include any reference to statutory claims, and we conclude that plaintiff did not waive his statutory rights under the termination agreement. *Northline Excavating, Inc v Livingston Co*, 302 Mich App 621, 628; 839 NW2d 693 (2013). Therefore, the trial court erred by granting defendant's first motion for summary disposition.

*Plaintiff May Be Able to Show Constructive Discharge.* Plaintiff next argues that the trial court erred in its holding that plaintiff could not prove, in the face of the termination agreement, that he was constructively discharged from his employment. We agree.

There is no genuine issue of material fact that plaintiff resigned from his position with defendant per the termination agreement. The fact of plaintiff's resignation, however, does not necessarily end the inquiry. To be precluded from claiming that he faced an adverse employment action in the form of termination, not only must the plaintiff have resigned, but that resignation must have been truly voluntary.

The doctrine of constructive discharge is a legal fiction created to determine whether a plaintiff's facially voluntary resignation was, in actuality, a result of the defendant's improper conduct such that the court will consider the resignation to be a de facto involuntary termination of the plaintiff's employment. Constructive discharge is not a cause of action in-and-of-itself; rather, constructive discharge is "a *defense* that a plaintiff interposes to preclude the defendant from claiming that the plaintiff voluntarily left employment." *Joliet v Pitoniak*, 475 Mich 30, 41; 715 NW2d 60 (2006). "A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Hammond United of Oakland, Inc*, 193 Mich App 146, 151; 483 NW2d 652 (1992). A constructive discharge depends upon the facts of each case and occurs when a reasonable person in the plaintiff's position "would have felt compelled to resign" as a result of the employer's improper conduct. *Jenkins v Southeastern Mich Chapter, American Red Cross*, 141 Mich App 785, 796; 369 NW2d 223 (1985).

We make several observations pertinent to this case: First, plaintiff does not renew on appeal his assertion that he resigned under duress, so we do not take up that part of the trial court's analysis. Second, plaintiff can show constructive discharge without also showing duress; while facts relevant to the two concepts may overlap, a plaintiff can show that he was constructively discharged without also showing that he did so under duress. See, e.g., *Handy v Brownlee*, 118 Fed Appx 850, 855 (CA 5, 2004). Third, the mere choice between resignation and termination alone does not establish that a resignation was involuntary, unless it is also shown that the employer lacked good cause to believe that there were grounds for the termination. See *Parker v Board of Regents of Tulsa Jr College*, 981 F2d 1159, 1162 (CA 10, 1992). Fourth, while the termination agreement is certainly evidence that plaintiff's resignation was voluntary, it may not be conclusive in every circumstance, as the very nature of constructive discharge is that a seemingly voluntary resignation was, in fact, an involuntary discharge in the face of intolerable conditions. See *Manning v City of Hazel Park*, 202 Mich App 685, 697-698; 509 NW2d 874 (1993). Fifth, alleged actions taken months or even years before the termination are unlikely to be relevant to the voluntariness of that termination, as some temporal proximity is needed to show a causal connection in all but the most extreme cases. See *Aho v Department of Corrections*, 263 Mich App 281, 291-292; 688 NW2d 104 (2004). And finally, because an adverse employment action is a predicate to plaintiff's claims, if plaintiff's resignation is truly voluntary, he cannot maintain a statutory retaliation or discrimination claim based on his leaving the company. See *Vagts v Perry Drug Stores, Inc*, 204 Mich App 481, 487; 516 NW2d 102 (1994).

Here, plaintiff alleged that defendant offered him a choice: he could resign and defendant would not challenge plaintiff's receipt of unemployment benefits and would not report negatively on plaintiff's employment with defendant to future employers or plaintiff's employment would be terminated, defendant would challenge plaintiff's receipt of unemployment benefits, and defendant would reveal plaintiff's shortcomings to plaintiff's potential future employers. By these facts, regardless of plaintiff's choice, he would no longer be employed by defendant. Plaintiff further alleged that defendant's purported grounds for termination were "bogus and pretextual" and that he had no opportunity to reflect on the choice given or consult an advisor or legal counsel with respect to his rights.

In *Manning*, this Court was presented with a similar set of allegations. The plaintiff in that case was employed by the city of Hazel Park as a "city manager/city clerk." 202 Mich App at 688. Following a mayoral change, the position of city manager/city clerk was split into two positions, and the plaintiff was relieved of her city-clerk duties, with an attendant reduction in salary. *Id*. The plaintiff alleged that the mayor and mayor pro tempore met with her three months later and informed her that they believed that she was drawing a higher salary than was authorized. *Id*. According to the plaintiff, the mayor and mayor pro tempore presented her with the following options: she could resign, retire, or she would be terminated. *Id*. The plaintiff asserted that she asked for some time to think about the options, but that her request was rebuffed. *Id*. The plaintiff alleged that she "chose to retire because her pension benefits would be affected if she resigned or was terminated and she would automatically lose her accumulated sick leave and vacation time if she was terminated." *Id*.

The plaintiff brought various discrimination claims against the city, the mayor, and the mayor pro tempore. *Id*. at 689. The trial court granted summary disposition to the defendants on

each of these claims. See *id*. On appeal, this Court reversed the trial court's grant of summary disposition. *Id*. at 698-699. The Court concluded that, where the plaintiff was offered a choice of retiring to protect her benefits or being terminated and losing those benefits, "a juror could reasonably believe that plaintiff was forced into an involuntary retirement." *Id*. at 698.

Given the case law, we must conclude that, at this early stage of litigation, there remains a question of fact on whether plaintiff voluntarily left his employment or whether defendant constructively discharged him. While plaintiff's signature on the termination agreement may be evidence that his resignation was voluntary, and the mere choice between resigning and being terminated is not alone sufficient to show constructive discharge, *supra*, plaintiff has not had the opportunity to explore whether defendant lacked good cause to believe that there were grounds for termination, i.e., whether defendant had good cause to believe that plaintiff failed to follow job duties, had excessive absences from work, and failed to treat others with courtesy and respect. When the trial court granted summary disposition to defendant, the parties had not yet started discovery. Thus, plaintiff should have an opportunity to explore whether he can make a viable claim for relief based on constructive discharge or, alternatively, defendant may be able to show after discovery that there is no genuine issue that plaintiff voluntarily resigned or that plaintiff's claims fail for a different reason unrelated to his termination. We stress that, to show that work conditions were so intolerable as to compel a resignation, plaintiff must be able to show a causal connection between a condition and his resignation, and absent strong evidence to the contrary, such connection will likely require a close temporal proximity. Defendant is free to refile a motion for summary disposition at the close of discovery.

Accordingly, we vacate the trial court's grant of summary disposition to defendant and remand the matter for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Brock A. Swartzle