# STATE OF MICHIGAN

# COURT OF APPEALS

---

JOHN DOES 11-18 and JANE DOE 1/all others
similarly situated,

   Plaintiffs-Appellees,

v

DEPARTMENT OF CORRECTIONS,
GOVERNOR, FORMER DIRECTOR
DEPARTMENT OF CORRECTIONS, FORMER
DEPUTY DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER CHIEF DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER WARDEN OF
CHARLES EGELER RECEPTION AND
GUIDANCE CENTER, WARDEN OF EARNEST
C. BROOKS CORRECTIONAL FACILITY,
FORMER WARDEN OF RICHARD A.
HANDLON CORRECTIONAL FACILITY,
WARDEN OF RICHARD A. HANDLON
CORRECTIONAL FACILITY, FORMER
WARDEN OF OAKS CORRECTIONAL
FACILITY, WARDEN OF THUMB
CORRECTIONAL FACILITY, WARDEN OF
CHIPPEWA CORRECTIONAL FACILITY,
WARDEN OF KINROSS CORRECTIONAL
FACILITY, WARDEN OF NEWBERRY
CORRECTIONAL FACILITY, and WARDEN
OF MICHIGAN REFORMATORY
CORRECTIONAL FACILITY,

   Defendants-Appellants.

FOR PUBLICATION
March 27, 2018
9:05 a.m.

No.  332536
Washtenaw Circuit Court
LC No.  13-001196-CZ

---

JOHN DOES 1-10/all others similarly situated,

   Plaintiffs-Appellees,

v

No.  335440
Washtenaw Circuit Court
LC No.  15-001006-CZ

DEPARTMENT OF CORRECTIONS, GOVERNOR, DIRECTOR DEPARTMENT OF CORRECTIONS, FORMER DIRECTOR DEPARTMENT OF CORRECTIONS, DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, FORMER DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, FORMER DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, FORMER CHIEF DEPUTY DIRECTOR DEPARTMENT OF CORRECTIONS FACILITIES ADMINISTRATION, WARDEN OF IONIA CORRECTIONAL FACILITY, FORMER WARDEN OF E. C. BROOKS CORRECTIONAL FACILITY, WARDEN OF GUS HARRISON CORRECTIONAL FACILITY, FORMER WARDEN OF RICHARD A. HANDLON CORRECTIONAL FACILITY, WARDEN OF RICHARD A. HANDLON CORRECTIONAL FACILITY, FORMER WARDEN OF OAKS CORRECTIONAL FACILITY, FORMER WARDEN OF THUMB CORRECTIONAL FACILITY, WARDEN OF CHIPPEWA CORRECTIONAL FACILITY, WARDEN OF MARQUETTE CORRECTIONAL FACILITY, WARDEN OF BELLAMY CREEK CORRECTIONAL FACILITY, WARDEN OF KINROSS CORRECTIONAL FACILITY, WARDEN OF NEWBERRY CORRECTIONAL FACILITY, FORMER WARDEN OF WOMEN'S HURON VALLEY CORRECTIONAL FACILITY, WARDEN OF WOMEN'S HURON VALLEY CORRECTIONAL FACILITY, WARDEN OF MICHIGAN REFORMATORY and WARDEN SAGINAW CORRECTIONAL FACILITY,

Defendants-Appellants.

_____

JOHN DOES 1-10/all others similarly situated,

Plaintiffs-Appellees,

v                                                    No.  335527
                                                     Washtenaw Circuit Court
DEPARTMENT OF CORRECTIONS,                           LC No.   15-001006-CZ
GOVERNOR, DIRECTOR DEPARTMENT OF
CORRECTIONS, FORMER DIRECTOR
DEPARTMENT OF CORRECTIONS, DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, DEPUTY DIRECTOR
DEPARTMENT OF CORRECTIONS
FACILITIES ADMINISTRATION, DIRECTOR
DEPARTMENT OF CORRECTIONS
FACILITIES ADMINISTRATION, FORMER
DEPUTY DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, FORMER CHIEF DEPUTY
DIRECTOR DEPARTMENT OF
CORRECTIONS FACILITIES
ADMINISTRATION, WARDEN OF IONIA
CORRECTIONAL FACILITY, FORMER
WARDEN OF E. C. BROOKS CORRECTIONAL
FACILITY, WARDEN OF GUS HARRISON
CORRECTIONAL FACILITY, FORMER
WARDEN OF RICHARD A. HANDLON
CORRECTIONAL FACILITY, WARDEN OF
RICHARD A. HANDLON CORRECTIONAL
FACILITY, FORMER WARDEN OF OAKS
CORRECTIONAL FACILITY, FORMER
WARDEN OF THUMB CORRECTIONAL
FACILITY, WARDEN OF CHIPPEWA
CORRECTIONAL FACILITY, WARDEN OF
MARQUETTE CORRECTIONAL FACILITY,
WARDEN OF BELLAMY CREEK
CORRECTIONAL FACILITY,
WARDEN OF KINROSS CORRECTIONAL

-3-

FACILITY, WARDEN OF NEWBERRY
CORRECTIONAL FACILITY, FORMER
WARDEN OF WOMEN'S HURON VALLEY
CORRECTIONAL FACILITY, WARDEN OF
WOMEN'S HURON VALLEY
CORRECTIONAL FACILITY, WARDEN OF
MICHIGAN REFORMATORY and WARDEN
SAGINAW CORRECTIONAL FACILITY,

Defendants-Appellants.

Before: O'CONNELL, P.J., and MURPHY and K. F. KELLY, JJ.

K. F. KELLY, J.

Defendants appeal by right and by leave from three rulings of the trial court. First, defendants claim that the trial court erred when it declared as unconstitutional an exclusion prohibiting individuals who are serving a sentence of imprisonment from bringing actions under the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. Next, defendants argue that the trial court erred when it found that the exclusion does not apply to trainees under Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, because those individuals are not serving a sentence of imprisonment. Finally, defendants maintain that the trial court erred when it concluded that governmental immunity does not apply to such civil rights actions.

As explained more fully below, we hold that the 1999 amendment to the ELCRA, specifically MCL 37.2301(b), does not pass constitutional muster. Because we find that the exclusion is unconstitutional, we need not consider whether the prohibition applies to HYTA youthful trainees. We further hold that governmental immunity does not apply to ELCRA claims. Therefore, finding no errors warranting reversal, we affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

This case was originally brought on behalf of seven unidentified male prisoners who sought relief under the ELCRA. They alleged that while they were under the age of 18, they were housed with adult prisoners who took advantage of their youth to commit sexual and physical abuse and harassment, and that defendants knew or should have known of the risk to plaintiffs, but failed to prevent the abuse and harassment, or aided and abetted it.

This case has been heavily litigated in the circuit court and in this Court. Since the case was originally filed on December 9, 2013, there have been multiple applications for leave to appeal in this Court as well as some proceedings in the Court of Claims, and applications for leave to appeal to our Supreme Court. Throughout the course of this litigation, various plaintiffs, claims, and defendants have been added and others have been dismissed. It is a procedural quagmire. Still, the issues on appeal are relatively straight-forward and are purely legal. We are first tasked with determining whether ELCRA, which excludes individuals who are serving a

-4-

sentence of imprisonment from bringing suit, is constitutional. We conclude that it is not. We must then consider whether defendants can assert governmental liability.

## II. ELCRA

The Michigan Constitution provides:

> No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation. [Const 1963, art 1, § 2.]

To that end, MCL 37.2302(a) of the ELCRA provides:

> Except where permitted by law, a person shall not:
>
> (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

In its current form, the ELCRA defines "public service" as:

> a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public, except that *public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment.* [MCL 37.2301(b) (emphasis added).]

The highlighted language was added in 1999 after this Court's decision in *Neal v Department of Corrections*, 232 Mich App 730; 592 NW2d 370 (1998) (*Neal II*), which concluded that prisons were not excluded from the definition of "public service." The "Enacting section 1" of the ELCRA provides:

> This amendatory act is curative and intended to correct any misinterpretation of legislative intent in the court of appeals decision *Neal v Department of Corrections*, 232 Mich App 730 (1998). This legislation further expresses the original intent of the legislature that an individual serving a sentence of imprisonment in a state or county correctional facility is not within the purview of this act.

At the heart of this appeal is whether the ELCRA, in its post-amendment form, is constitutional. "We review de novo constitutional questions such as whether a party was denied due process and equal protection under the law." *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013). An issue involving statutory construction is likewise reviewed de novo. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

-5-

The role of this Court in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute. The focus of our analysis must be the statute's express language, which offers the most reliable evidence of the Legislature's intent. When the statutory language is clear and unambiguous, judicial construction is not permitted and the statute is enforced as written. A court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [*Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490, 495 (2017) (quotation marks and footnotes omitted).]

As previously stated, this case has a long and protracted history. In 2014, the trial court denied defendants' motion for summary disposition, citing the same equal protection concerns that it later articulated in the order on appeal here. That ruling, along with a ruling regarding the prison litigation reform act (PLRA), MCL 600.5501 *et seq.*, was the subject of leave applications filed under Docket Nos. 321013 and 321756. This Court denied leave in both applications, but our Supreme Court remanded for consideration as on leave granted. *Doe v Dep't of Corrections*, 497 Mich 882; 854 NW2d 718 (2014). That resulted in *Doe v Dep't of Corrections*, 312 Mich App 97; 878 NW2d 293 (2015). We held that the trial court erred in not granting summary disposition for failure to comply with the disclosure requirement of the PLRA and that plaintiffs could not amend their complaint to cure the defect. *Id*. at 113-114, 138. This Court also found that the challenged provisions of the ELCRA did not violate the right to equal protection. *Id*. at 138-139. However, on March 30, 2016, our Supreme Court vacated the equal protection ruling in this Court's *Doe* decision, because "[i]n light of the Court of Appeals ruling that plaintiffs' complaint should be dismissed under the Prisoner Litigation Reform Act, MCL 600.5501 et seq., it was unnecessary to resolve the remaining issues." *Doe v Dep't of Corrections*, 499 Mich 886; 876 NW2d 570 (2016).

In *Doe*, both Judge Riordan and Judge Beckering provided extensive and lengthy analysis on the constitutionality (or lack thereof) of the ELCRA amendment. Judge Riordan concluded that prisoners were not similarly situated to non-prisoners and that the legislature's action in excluding prisoners from ELCRA was rationally related to its interest in protecting the public fisc. *Doe*, 312 Mich App at 127-138. Judge Beckering had a different approach to the case. She emphasized the following terms in Michigan's Equal Protection Clause:

> *No person* shall be denied the equal protection of the laws; nor shall *any person* be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature *shall implement* this section by appropriate legislation. [*Doe*, 312 Mich App at 145, quoting Const 1963, art 1, § 2.]

Judge Beckering noted that the use of the singular within the clause demonstrated that it was "unquestionably the intent of the ratifiers that civil rights protections be extended to *any* and *all* persons." *Id*. Under the second sentence, the legislature was constitutionally mandated to implement protection to *any* and *all* persons and lacked authority to exclude anyone. *Id*. at 146-147. In response to that mandate, the legislature enacted the ELCRA, which also contains the singular – "a person shall not . . . deny *an individual* . . ." *Id*. at 147. Judge Beckering noted

-6-

that following *Neal II* the legislature amended the statute and, in so doing, violated its constitutional mandate. *Id*. at 148-149. Judge Beckering explained:

> The parties and the majority frame the issue at hand as one calling for a determination of whether the 1999 amendment to the ELCRA violates equal protection by denying prisoners, as a class, protections under the ELCRA. In my opinion, this focus is directed at the wrong section of Const. 1963, art. 1, § 2. I believe that the analysis misses a more significant and dispositive issue. That is, whether the Legislature has authority, given the constitutional directive in Const. 1963, art 1, § 2 pertaining to *all citizens,* to carve out a particular class of individuals and exclude them from the protections of the ELCRA.
>
> I would hold that the Legislature acted outside of its constitutional authority by removing prisoners from the scope of the ELCRA and thereby denying protection to all. Where the analysis in this case should start, and end, in my opinion, is with the idea that Const. 1963, art 1, § 2 contains more than just the guarantee of equal protection of the laws; it contains a directive to the Legislature to implement legislation that protects the rights of *all* citizens. [*Doe,* 312 Mich App at 149-150.]

* * *

> [T]he Legislature is not permitted, pursuant to the implementation language contained in Const. 1963, art. 1, § 2, to define the persons to whom civil rights are guaranteed. The Constitution already answers that question, unequivocally guaranteeing that legislation to protect civil rights must be extended to all, without reservation or limitation. Any implementation language contained in Const 1963, art 1, § 2 should not be construed as giving the Legislature "the authority to circumvent the protections that the section guarantees." See *Midland Cogeneration* [*Venture Ltd Partnership v Naftaly*]*,* 489 Mich [83] at 95; 803 NW2d 674. If it did, just as the Court cautioned in *Midland Cogeneration,* the protection of "any person" would "lose [its] strength" and the Legislature would render such protection meaningless. See *id.* Consequently, I would hold that the 1999 amendment, by eradicating a constitutional guarantee, violates Const 1963, art 1, § 2. [*Id*. at 153-154.]

Judge Beckering did not believe that the legislature was endowed with the discretion to define the meaning of the constitutional mandate by narrowing the scope of protected individuals. *Id*. at 154. Because the amendment infringed upon a constitutional directive, it could not stand. *Id*. at 151-152. Judge Beckering surmised that "there is no need to evaluate the exclusion of prisoners from the scope of the ELCRA on equal protection grounds. The analysis of the constitutionality of the 1999 amendment should begin with the directive given to the Legislature in Const 1963, art 1, § 2 and end with the conclusion that the 1999 amendment is constitutionally infirm because it is contrary to the directive contained in article 1, § 2." *Doe*, 312 Mich App at 156 (footnote omitted).

We conclude that the amendment is unconstitutional for the reasons stated by Judge Beckering's foregoing analysis and, therefore, we specifically adopt this analysis as our own. The legislature's amendment of the ELCRA to effectively bar correctional facility prisoners from bringing ELCRA suits is in direct violation of Const 1963, art 1, § 2 of the Michigan Constitution, which makes clear that the mandatory legislation must protect *all* persons. The amendment violates the constitutional mandate that the legislature craft laws for the protection of its individual citizens.

## III. GOVERNMENTAL IMMUNITY DOES NOT APPLY TO ELCRA CLAIMS

Defendants argue that the trial court erred when it failed to grant their motion for summary disposition. "A trial court may grant a motion for summary disposition under MCR 2.116(C)(7) on the ground that a claim is barred because of immunity granted by law." *McLean v McElhaney*, 289 Mich App 592, 597; 798 NW2d 29 (2010). Such a decision is reviewed de novo on appeal. *Id.* at 596.

Contrary to defendants' assertions, the law is clear that governmental immunity does not apply to ELCRA claims. *In re Bradley Estate*, 494 Mich 367, 393 n 60; 835 NW2d 545 (2013) ("Compare MCL 600.1721 and MCL 600.1701 with other statutes expressly waiving governmental immunity, including the Elliot-Larsen Civil Rights Act . . ."); *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002) ("[T]here are other areas outside the GTLA where the Legislature has allowed specific actions against the government to stand, such as the Civil Rights Act."); *Diamond v Witherspoon*, 265 Mich App 673, 691; 696 NW2d 770 (2005) ("The Legislature has allowed specific actions against the government to stand, such as one under the CRA."); *Manning v Hazel Park*, 202 Mich App 685; 509 NW2d 874 (1993) ("Governmental immunity is not a defense to a claim brought under the Civil Rights Act.") Defendants cite *Jones v Bitner*, 300 Mich App 65; 832 NW2d 426 (2013), in support of their position that immunity supersedes and replaces pre-existing statutory waivers of immunity. However, the *Jones* case involved an interplay between the GTLA and the Child Protection Law (CPL), MCL 722.621 *et seq.*, and does not support defendants' argument. *Jones* simply cannot and does not result in overruling the established binding precedent that governmental immunity does not apply to ELCRA claims.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ William B. Murphy