# STATE OF MICHIGAN

# COURT OF APPEALS

TOD MCLAIN, Personal Representative of the
ESTATE OF TRACY MCLAIN,

          Plaintiff-Appellant,

v

LANSING FIRE DEPARTMENT, CITY OF
LANSING, and JEFFREY WILLIAMS,

          Respondents-Appellees,

and

MICHAEL DEMPS,

          Defendant.

FOR PUBLICATION
March 3, 2015
9:05 a.m.

No. 318927
Ingham Circuit Court
LC No. 11-000859-NH

Before: SAAD, P.J., and OWENS and K. F. KELLY, JJ.

SAAD, P.J.

       Plaintiff appeals the trial court's grant of summary disposition to defendant.[1]  For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

       This case involves the death of plaintiff's decedent, Tracy McLain.  According to plaintiff's original complaint, McLain suffered a respiratory attack in February 2009.  When emergency personnel arrived, they administered medication and CPR, and inserted a breathing tube into McLain.  Though McLain was promptly delivered to the hospital, she was declared brain-dead several days after her admission, and died soon after.  Plaintiff's complaint attributed

---

[1] Defendant Michael Demps also provided emergency medical services in connection with the events underlying this case, but he and plaintiff have reached a settlement.

-1-

her death to defendant Jeffrey Williams'[2] alleged placement of the breathing tube in her esophagus instead of her trachea.

In deposition, Williams said that he followed proper procedure during McLain's treatment, and that he did not place the breathing tube in McLain's esophagus—nor did he see anyone else do so. He also stated that: (1) the intubating procedure appeared to have been successful; (2) he and other emergency personnel continuously monitored McLain's status on the way to the hospital; and (3) he did not know how the tube could have been in her esophagus, apart from the possibility that it became dislodged. In addition to stressing Williams' statement that he did not place the breathing tube in McLain's esophagus, defendants argued that the Governmental Tort Liability Act ("GTLA"), MCL 691.1401, *et seq.*, and the Emergency Medical Services Act ("EMSA"), MCL 333.20901 *et seq.*, provided them with immunity from plaintiff's suit.

After an initial hearing, the trial court held that the GTLA did not give defendants immunity from plaintiff's suit.[3] It further permitted plaintiff to file an amended complaint that alleged gross negligence or willful misconduct, to abrogate the immunity defendants claimed under the EMSA. Plaintiff filed such an amended complaint, and defendants responded with a motion for summary disposition pursuant to MCR 2.116(C)(7).

After another hearing, the trial court granted defendants' motion for summary disposition. It held that plaintiff had failed to create a question of fact that defendants treated McLain with "gross negligence" or "willful misconduct," and that defendants were thus entitled to immunity under the EMSA. The trial court also noted that the only evidence presented by plaintiff that suggested any error by defendants in their treatment of McLain—(1) "medical progress notes"[4] from the hospital that stated the breathing tube was located in McLain's

---

[2] Williams works as a fireman and paramedic for defendant City of Lansing.

[3] The trial court referenced MCL 691.1407(4), which provides:

> This act does not grant immunity to a governmental agency or an employee or agent of a governmental agency with respect to providing medical care or treatment to a patient, except medical care or treatment provided to a patient in a hospital owned or operated by the department of community health or a hospital owned or operated by the department of corrections and except care or treatment provided by an uncompensated search and rescue operation medical assistant or tactical operation medical assistant.

[4] An intern at the hospital dictated the medical progress notes. He clarified in deposition that he did not have firsthand knowledge of many of the events described in the notes: for instance, he did not discover the breathing tube's placement in McLain's esophagus, nor was he aware of *when* the breathing tube might have lodged itself in McLain's esophagus. He emphasized that his report reflected what he had been told about McLain's case by other individuals (who he could no longer identify). The trial court therefore noted that the intern did not have "any direct information as to where the tube was located" and that the note was a "subjective" document "of

-2-

esophagus (though the notes did not indicate *when* the breathing tube might have lodged itself in McLain's esophagus); and (2) plaintiff's assertion that Williams' testimony was not credible—was either of dubious admissibility and accuracy, or unsupported.[5]

On appeal, plaintiff claims that the trial court should have granted him summary disposition under MCR 2.116(C)(9), or entered a default order against defendants under MCR 2.115(B), because defendants supposedly did not file an affidavit of meritorious defense. Plaintiff also asserts that the trial court erred when it held that, as a matter of law, plaintiff had failed to show that defendants acted with gross negligence under the EMSA. Defendants ask us to uphold the ruling of the trial court.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). When it grants a motion under MCR 2.116(C)(7), a trial court should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the

---

the person writing the note's best sense." For these reasons, the trial court doubted the document's admissibility.

[5] Specifically, the trial court stated:

> [I]t really does come down to . . . this medical record [dictated by the intern], which sort of sets in motion the suggestion that the tube was in the esophagus and not the trachea, and whether or not that . . . creates some fact question that sort of you can backtrack into what [defendant] Williams did or did not do in terms of was he negligent in terms of not observing something, or was he grossly negligent . . . .
>
> And when I looked at the testimony of [the intern], . . . it's not just that he doesn't remember what he did at the time. It seems clear . . . that he was not the person who had any direct information as to where the tube was located. . . . [W]hen you review that testimony, it basically says that he doesn't know where the information came from other than . . . it's sort of a subjective note of the person writing the note's best sense, or, as he says "A note written to the best of their knowledge."
>
> . . . [I]n my view, that's not really evidence that's admissible in response to the . . . obligation on the part of the non-moving party to refute this motion for summary disposition.
>
> Absent that, all we are left with, really, is this argument, . . . that it's a credibility issue, and that we should submit to the jury whether or not Williams is credible in what he says he did even though there is no other testimony that really challenges that other than . . . this medical note.

light most favorable to the nonmoving party. *Tarlea v Crabtree*, 263 Mich App 80, 87; 687 NW2d 333 (2004).

A trial court's decision on whether to enter a default in response to a defendant's failure to submit an affidavit of meritorious defense is reviewed for an abuse of discretion. See *Kowalski v Fiutowski*, 247 Mich App 156, 164-165; 635 NW2d 502 (2001). A trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

## III. ANALYSIS

### A. MERITORIOUS DEFENSE

MCL 600.2912e(1) specifies that:

In an action alleging medical malpractice, within 21 days after the plaintiff has filed an affidavit in compliance with [MCL 600.2912d], the defendant shall file an answer to the complaint. Subject to subsection (2), the defendant or, if the defendant is represented by an attorney, the defendant's attorney shall file, not later than 91 days after the plaintiff or the plaintiff's attorney serves the affidavit required under [MCL 600.2912d], an affidavit of meritorious defense signed by a health professional who the defendant's attorney reasonably believes meets the requirements for an expert witness under [MCL 600.2169].[6]

However, a medical malpractice defendant who asserts governmental immunity under the GTLA is not required to file an affidavit of meritorious defense pursuant to MCL 600.2912e(1):

Because governmental employees are immune from breaches of the standard of ordinary care, the affidavit of merit requirements of MCL 600.2912e are not relevant to a defendant otherwise entitled to governmental immunity, and we therefore conclude that such a defendant may not lose the benefit of that immunity merely by failing to timely file the affidavit of meritorious defense. [*Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 412-13, 716 NW2d 236 (2006).]

Although the EMSA is a separate statute from the GTLA, the two laws "share the common purpose of immunizing certain agents from ordinary negligence and permitting liability for gross negligence." *Jennings v Southwood*, 446 Mich 125, 136; 521 NW2d 230 (1994). As such, "the terms of the provisions should be read in pari materia." *Id.* Accordingly, a defendant

---

[6] The Legislature modified this provision on March 28, 2013, to begin the 91-day countdown from *service* of the plaintiff's affidavit of merit, instead of the mere filing of it. 2012 PA 609. This procedural change is not relevant to our determination of this case.

who claims immunity under the EMSA may not lose the benefit of that immunity merely by failing to timely file an affidavit of meritorious defense under MCL 600.2912e.

Here, plaintiff says that the trial court erred when it denied his motion for summary disposition under MCR 2.116(C)(9), and motion for entry of a default under MCR 2.115(B), because defendants did not file an affidavit of meritorious defense. However, defendants argued that they were immune from plaintiff's suit under the GTLA and the EMSA. They were therefore not required to file an affidavit of meritorious defense, and the trial court correctly denied plaintiff's motions. *Costa*, 475 Mich at 412-13.[7]

### B. GROSS NEGLIGENCE OR WILLFUL MISCONDUCT

MCL 333.20965(1) states:

Unless an act or omission is the result of *gross negligence* or *willful misconduct*, the acts or omissions of a medical first responder, emergency medical technician, emergency medical technician specialist, paramedic, medical director of a medical control authority or his or her designee . . . in a hospital before transferring patient care to hospital personnel, or in a clinical setting that are consistent with the individual's licensure or additional training required by the medical control authority . . . or consistent with an approved procedure for that particular education program do not impose liability in the treatment of a patient on those individuals or any of the following persons:

\* \* \*

(f) The authoritative governmental unit or units.  [MCL 333.20965(1) (emphasis added).]

---

[7] In any event, plaintiff is wrong that MCR 2.115(B) *mandates* an entry of default in the event a defendant fails to file an affidavit of meritorious defense. Instead, a court, in the context of a medical malpractice action, "*may* strike the answer and enter a default" under MCR 2.115(B). *Kowalski,* 247 Mich App at 164 (emphasis added). Whether to enter a default or resort to lesser remedies is left to the sound discretion of the court. See *id.* at 164-166. See also *Costa v Community Emergency Med Servs, Inc*, 263 Mich App 572, 580-581; 689 NW2d 712 (2004), aff'd in part and rev'd in part by 475 Mich 403 ("This Court has more than once rejected similar assertions that a medical malpractice defendant's failure to file an affidavit of meritorious defense pursuant to MCL 600.2912e mandates a default or other preclusion of the defendant from presenting a defense . . .").

Here, the trial court properly chose not to enter a default. Defendant *did* "plead or otherwise defend" against plaintiff's allegations, by asserting immunity, under both the GTLA and the EMSA. MCR 2.603. Plaintiff's attempt to invalidate the trial court's order on the basis of defendant's alleged failure to answer its complaint is thus the exact sort of hollow proceduralism the Michigan Supreme Court cautioned against in *Costa*. See *Costa*, 475 Mich at 412-413 n 5.

"Gross negligence" is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Jennings*, 446 Mich at 136. "[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v Rozwood*, 461 Mich 109, 122-123; 597 NW2d 817 (1999). Further, "only evidence whose content or substance is admissible can establish the existence of gross negligence . . . ." *Id*. "Willful misconduct" is conduct with "intent to harm." *Jennings*, 446 Mich at 140-141.

Here, plaintiff unconvincingly argues that his pleadings and offers of proof created a question of fact regarding whether defendants committed gross negligence or willful misconduct in their medical response to McLain's health emergency, which abrogates defendants' immunity from suit under MCL 333.20965. As the trial court noted, only two parts of the "volumes" of evidence plaintiff submitted are relevant to showing defendants were responsible for the incorrect location of the breathing tube: (1) the intern's medical progress notes; and (2) plaintiff's unsupported assertions that Williams' testimony was not credible. Neither is sufficient to create a question of fact to abrogate defendant's immunity from suit.

Again, the medical progress notes were dictated by a medical intern, who, by his own admission, did not have direct knowledge of where the tube was located, and did not know from whom he received the information he recorded—including his notation that the tube was located in McLain's esophagus.[8] As for plaintiff's assertions that Williams' testimony lacked credibility, plaintiff did not present any testimony to oppose Williams' version of events—he simply alleged that they were wrong. Accordingly, the trial court correctly held[9] that the medical progress notes and plaintiff's protestations against Williams' credibility were insufficient to rebut defendants' evidence that Williams did not commit any errors when he attended to McLain.[10]

Because plaintiff did not submit evidence sufficient to create a question of fact as to the "gross negligence" or "willful misconduct" of defendants' actions under the EMSA, the trial court properly granted defendants summary disposition under MCR 2.116(C)(7).

---

[8] As the trial court implied, the medical intern indicated at his deposition that the medical progress notes were hearsay, and thus inadmissible. Though we do not reach the issue, because adjudication on the matter is not necessary to resolve this case, it is possible that the medical progress notes are admissible under the exception to the hearsay rule contained in MRE 803(6) (records of "occurrences, . . . opinions, or diagnoses . . . kept in the course of a regularly conducted business activity," and not prepared in anticipation of litigation, may be admissible).

[9] See n 5 for the trial court's discussion of both the medical progress notes and plaintiff's assertion that Williams lacked credibility.

[10] Plaintiff is barred from using res ipsa loquitur to abrogate defendants' immunity under the EMSA because "[w]hile the doctrine . . . may assist in establishing ordinary negligence, [it] is not available where the requisite standard of conduct is gross negligence or wilful and wanton misconduct." *Maiden*, 461 Mich at 127.

-6-

Affirmed.

/s/ Henry William Saad
/s/ Donald S. Owens
/s/ Kirsten Frank Kelly