# STATE OF MICHIGAN

# COURT OF APPEALS

---

GLEN SCHILKEY, MICHELLE SCHILKEY, and
GLEN AND MICHELLE SCHILKEY
REVOCABLE TRUST,

      Plaintiffs/Counter Defendants-
      Appellants,

v

PROSPER MANAGEMENT, LLC, PROSPER
TECHNICAL INDEX FUND, LP, and SCOTT P.
WORDEN,

      Defendants/Counter Plaintiffs,

and

DA REAL PROPERTIES, LLC,

      Garnishee Defendant-Appellee.

UNPUBLISHED
October 27, 2016


No. 327243
St. Clair Circuit Court
LC No. 12-000861-CZ

---

Before: GADOLA, P.J., and WILDER and METER, JJ.

PER CURIAM.

In this action to void the allegedly fraudulent transfer of assets by defendant Prosper Management, LLC (Prosper Management) to garnishee defendant, plaintiffs appeal as of right, challenging an order denying their motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact), as well as an order granting garnishee defendant's motion for summary disposition pursuant to MCR 2.116(C)(7) (dismissal is appropriate on the basis of release). We affirm.

Plaintiffs entered into a settlement agreement with defendants in May 2013. In accordance with the terms of that agreement, defendants agreed to pay plaintiffs $500,000 in two installments in exchange for plaintiffs withdrawing the complaint it had filed against defendants

-1-

as well as certain administrative complaints.[1]  Defendants did not make the required second payment and a judgment was entered against defendants and in favor of plaintiffs.  Immediately preceding entry of the judgment, a member of Prosper Management that was also dissatisfied with the performance of the company and had threatened litigation—the Andrew and Dana Kotsovos Revocable Trust (the Kotsovos Trust), through its trustees, Andrew and Dana Kotsovos—entered into an agreement whereby promissory notes and mortgages related to two properties on Huron Avenue in Port Huron, Michigan were assigned to the Kotsovos Trust.  The Kotsovos Trust in turn assigned the promissory notes and mortgages to garnishee defendant, DA Real Properties, LLC, a company owned by Andrew and Dana Kotsovos.

Plaintiffs argue on appeal that the trial court erred by denying their motion for summary disposition because they proved that these asset transfers were fraudulent under MCL 566.34(1) and MCL 566.35(2).  We disagree.  We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10).  *Jimkoski v Shupe*, 282 Mich App 1, 4; 763 NW2d 1 (2008).  A genuine issue of material fact exists when the evidence submitted might permit inferences contrary to the facts as asserted by the movant.  *Dillard v Schlussel*, 308 Mich App 429, 445; 865 NW2d 648 (2014).  We similarly review de novo issues of statutory construction.  *Id*. at 444.  When interpreting a statute, we

> give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain the Legislature's intent only if the statutory language is ambiguous.  Where the language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written.  [*Id*. at 445 (quotation marks and citations omitted).]

The Uniform Fraudulent Transfer Act (UFTA), MCL 566.31 *et seq*., is "designed to prevent debtors from transferring their property in bad faith before creditors can reach it." *Dillard*, 308 Mich App at 446 (quotation marks and citation omitted).  It provides that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation" under any of the following circumstances:

> (a)  With actual intent to hinder, delay, or defraud any creditor of the debtor.

> (b)  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:

> (*i*)  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

---

[1] The agreement also provided a penalty of $25,000 if defendants failed to make the full payment within a certain period of time.

(*ii*) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due. [MCL 566.34(1).]

The UFTA provides a non-inclusive list of factors (historically referred to as the "badges of fraud") that may be considered to determine actual intent under MCL 566.34(1). See MCL 566.34(2) (listing the factors). These statutory factors correspond to the historical badges of fraud, which were "circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them." *Dillard*, 308 Mich App at 449 (quotation marks and citation omitted). "[O]nce a creditor establishes the presence of multiple badges of fraud, he or she has established a fact question regarding actual intent." *Id.* at 454.

Plaintiffs assert that they were entitled to summary disposition pursuant to MCL 566.34(1)(a) because the evidence allegedly established six badges of fraud: (1) the transfers were to an insider, MCL 566.34(2)(a), specifically to the Kotsovos Trust, which assigned the assets to garnishee defendant; (2) plaintiffs sued defendants before Prosper Management made the transfers, MCL 566.34(2)(d); (3) the transfers were substantially all of Prosper Management's assets, MCL 566.34(2)(e); (4) the value of the consideration received by Prosper Management was not reasonably equivalent to the value of the assets transferred or the amount of the obligation incurred, MCL 566.34(2)(h); (5) Prosper Management was insolvent or became insolvent shortly after making the transfers, MCL 566.34(2)(i); and (6) the transfers occurred shortly before or after Prosper Management incurred a substantial debt, MCL 566.34(2)(j). Plaintiffs set forth evidence supporting these six factors. However, it is unnecessary to address the merits of the evidence supporting each factor because, even if we were to conclude that the asserted evidence supports those factors, it would only establish a factual question regarding Prosper Management's intent, not a definite conclusion of law regarding actual intent. *Dillard*, 308 Mich App at 454. If the trial court ignored the factors supporting Prosper Management's claim that the transfers were not made to defraud plaintiffs and credited plaintiffs' claims and evidence, it would have invaded the province of the fact-finder. *Id*. Therefore, plaintiffs were not entitled to summary disposition on this basis.

Plaintiffs next argue that they were entitled to summary disposition because the proofs established a case of constructive fraud under MCL 566.35(2), which provides the following:

A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

We agree with plaintiffs that the transfers in this case were to an insider for purposes of this statute. The term "insider" is defined in MCL 566.31(g) as including five categories. The word "includes" may be a term of enlargement or limitation, *Frame v Nehls*, 452 Mich 171, 178-179; 550 NW2d 739 (1996), or may signal the presence of an illustrative list, *Samantar v Yousuf*, 560 US 305, 317; 130 S Ct 2278; 176 L Ed 2d 1047 (2010). We conclude that the language of the statute is not limited to only the enumerated categories of what constitutes an "insider" under MCL 566.31(g), particularly when it is clear that the UFTA is designed "to prevent debtors from transferring their property in bad faith before creditors can reach it." *Dillard*, 308 Mich App at

446 (quotation marks and citation omitted). Limiting the definition of "insider" to only the enumerated categories absent such an express requirement by the Legislature would not effectuate the UFTA's purpose.

The Kotsovos Trust was a member of Prosper Management, a limited liability company. Although the UFTA does not explicitly define an insider with respect to relationships arising from a limited liability company and a member of that company, the transaction between Prosper Management and the Kotsovos Trust is tantamount to an "insider" deal for purposes of the UFTA because, as a member of Prosper Management, the Kotsovos Trust possessed knowledge regarding the settlement between Prosper Management and plaintiffs as well as the success (or lack thereof) of Prosper Management's investments. Further, Andrew Kotsovos is a member of garnishee defendant, to whom the notes and mortgages were transferred. See, e.g., *Coleman–Nichols v Tixon Corp*, 203 Mich App 645, 660; 513 NW2d 441 (1994) (under the former statute—the Uniform Fraudulent Conveyance Act, MCL 566.11 *et seq*., as enacted by 1919 PA 310—the "badges of fraud" included "a close relationship between transferor and transferee"); *Gen Trading Inc v Yale Materials Handling Corp*, 119 F3d 1485, 1499 (CA 11, 1997) (construing Florida's version of the UFTA and concluding that "[a] close relationship between a transferor debtor and a transferee is a factor equivalent to a badge of fraud that should be considered in determining fraudulent intent"). Although plaintiffs demonstrated that the transfers were to an insider, there were issues of material fact regarding whether Prosper Management was insolvent at the time of the transfers and whether garnishee defendant, as the assignee of the Kotsovos Trust, had reasonable cause to believe that Prosper Management was insolvent at that time. See *Dillard*, 308 Mich App at 456 ("Summary disposition is inappropriate for deciding cases premised on intent, good faith, or *reasonableness*.") (emphasis added). Accordingly, plaintiffs were also not entitled to summary disposition on this basis.

Finally, plaintiffs argue that the trial court erred by concluding that its claim was barred by the release in the settlement agreement. We review de novo whether the trial court properly determined that a release barred a plaintiff's claim pursuant to MCR 2.116(C)(7). *Adair v State*, 470 Mich 105, 119; 680 NW2d 386 (2004). "When it grants a motion under MCR 2.116(C)(7), a trial court should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *McLain v Lansing Fire Dep't*, 309 Mich App 335, 340; 869 NW2d 645 (2015). "An agreement to settle a pending lawsuit is a contract, governed by the legal rules applicable to the construction and interpretation of other contracts[,]" *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 663; 770 NW2d 902 (2009), and this Court reviews de novo a trial court's interpretation of contract language, *id*. at 664.

"The validity of a release turns on the intent of the parties. A release must be fairly and knowingly made to be valid." *Batshon v Mar-Que Gen Contractors, Inc*, 463 Mich 646, 649 n 4; 624 NW2d 903 (2001). "If the language of the release is unambiguous, it must be construed, as a whole, according to its plain and ordinary meaning." *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 374; 838 NW2d 720 (2013). "A release is invalid if (1) the releasor was acting under duress, (2) there was a misrepresentation as to the nature of the release agreement, or (3) there was fraudulent or overreaching conduct to secure the release." *Brooks v Holmes*, 163 Mich App 143, 145; 413 NW2d 688 (1987).

In this case, plaintiffs do not challenge the *validity* of the terms of the release, but rather challenge whether garnishee defendant is protected by the release contained in the settlement agreement. The settlement agreement provides, in relevant part, the following:

1. Plaintiffs [sic] Release of Ownership Interests: Upon execution of this Settlement Agreement, Plaintiffs unconditionally agree and acknowledge that Plaintiffs have no ownership interest in Prosper Management, LLC[,] Prosper Technical Index Fund, L.P., Prosper Technical Index Fund, LLC[,] or any affiliated or subsidiary entity. Plaintiffs further irrevocably release and waive any claim that has previously arisen or might arise in the future from an ownership in Prosper Management, LLC[,] Prosper Technical Index Fund, L.P., Prosper Technical Index Fund[,] LLC[,] or any affiliated or subsidiary entity. Upon execution of this Settlement Agreement, Plaintiffs authorize [Prosper Management] and [Prosper Technical Index Fund, L.P.] to cancel any certificates or documents indicating plaintiffs have any ownership interest in [Prosper Management] and [Prosper Technical Index Fund, L.P.].

\* \* \*

3. Release: Upon execution of this Settlement Agreement, Plaintiffs release and forever discharge the Defendants and all affiliated or subsidiary entities, all of their respective past, present and future officers, employees, members, partners, agents, insurance carriers, vendors, contractors, accountants, administrators, successors and assigns of, from and against all claims, demands, actions, causes of actions, obligations, and damages.

We conclude that the release language in the settlement agreement is clear and unambiguous and must be interpreted as written. Section 3 of the settlement agreement expressly states that, upon execution of the agreement, plaintiffs release and forever discharge the defendants, its members, and its assignees from and against *all* claims, demands, and actions. Garnishee defendant is an assignee of the Kotsovos Trust, which was a member of Prosper Management at the time the parties executed the settlement agreement, and thus is protected by the broad terms of the release. The language in Section 1 further states that, upon execution, plaintiffs "irrevocably release and waive *any claim that has previously arisen or might arise in the future from an ownership in Prosper Management, LLC . . . .*" (emphasis added). Contrary to plaintiffs' argument, the release language is not limited to any claims related to plaintiffs' ownership in Prosper Management; instead, the release refers to any claims that arise from "an ownership in" Prosper Management, which includes garnishee defendant as an assignee of the Kotsovos Trust. As an investor, the Kotsovos Trust attempted to settle its potential claims against Prosper Management by entering an agreement for the assignment of the Huron Avenue properties' promissory notes and mortgages to garnishee defendant. Under Section 1 of the settlement agreement, plaintiffs expressly released any claim regarding this assignment because

it arose from "an ownership in" Prosper Management.[2]  Therefore, the trial court properly granted garnishee defendant's motion for summary disposition under MCR 2.116(C)(7).

Affirmed.

/s/ Michael F. Gadola
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter

---

[2] We reject plaintiffs' assertion that such an interpretation of the release could result in defendants avoiding their obligation to pay the entire $500,000 due under the terms of the settlement agreement.  Section 2 of the settlement agreement expressly provides the terms of payment and for the entry of judgment if defendants defaulted on the payment.  The release of garnishee defendant from this action does not obviate defendants' obligations under the agreement.  Further, if plaintiffs wanted the release to be dependent on defendants' payment of the full amount due, they were free to negotiate that term, but failed to do so.