# STATE OF MICHIGAN

# COURT OF APPEALS

---

ROBERT TSCHIRHART, MISTY A. PRILL, CECI PRATT, LELAND PRATT, MADALYN O'CONNOR, CHRISTOPHER A. NATZEL, SHIRLEY A. MURRAY, DUSTIN R. MAURER, MARILYN R. MCALLISTER, JANEL MAYWORM, ANN MINNICK MASSEY, DOLORES LEONARD, MICHAEL J. KOHLER, KENNETH A. HACKER, SR., ESTHER EVANS, SAMUEL M. GAGE, RUTH ANN ETZLER, LEONARD J. ETZLER, WILLIAM H. EPPENBROCK, PETER B. CAPLING, SUE CAPLING, ROBERT R. BECHTEL, A. JAMES BRAUN, and TODD A. KLOSKA,

UNPUBLISHED
May 17, 2018

Plaintiffs-Appellees,

v

No.  336668
Huron Circuit Court
LC No.  14-105257-NI

PAMAR ENTERPRISES, INC.,

Defendant-Appellee,

and

CITY OF BAD AXE, CITY OF BAD AXE DEPARTMENT OF PUBLIC WORKS, and CITY OF BAD AXE WASTE WATER TREATMENT FACILITY,

Defendants-Appellants.

---

Before:  O'CONNELL, P.J., and HOEKSTRA and K. F. KELLY, JJ.

PER CURIAM.

In this action involving the sewer system disposal event exception to governmental immunity, defendants City of Bad Axe, City of Bad Axe Department of Public Works, and City of Bad Axe Waste Water Treatment Facility ("the Bad Axe defendants") appeal as of right the order denying their motion for summary disposition on governmental immunity grounds under

-1-

MCR 2.116(C)(7). Because reasonable minds could not conclude that defects in the sewer system were a substantial proximate cause of the sewer event and the damage to plaintiffs' properties, we reverse and remand for entry of summary disposition in favor of the Bad Axe defendants.

## I. FACTS

Plaintiffs are residents and property owners in Bad Axe, Michigan, who experienced flooding in their homes caused by a backup of rain water and sewage in the Bad Axe sanitary sewer system in July 2013.

Before the backups into plaintiffs' homes, Pamar Enterprises, Inc. ("Pamar") was engaged to perform construction work within the city of Bad Axe, including asphalt reconstruction and storm and sanitary sewer projects. This construction was ongoing in July 2013. As part of the project, Pamar removed the existing pavement in the construction zone, reducing the road to a "dirt/stone" base. The elevation of the construction zone was lower than the surrounding area, creating a "bath-tub" like effect. Pamar also removed the manhole covers in the construction zone, leveling them down to grade. To allow traffic to pass, the open manholes were covered with steel plates. But, these steel plates did not prevent rain water in the construction area from entering into the sewer system.

On Saturday, July 6 and July 8, 2013, Bad Axe received a substantial amount of rain. The construction area was covered in a large pool of water, approximately 100 yards long and 8 to 10 inches deep, and water entered the sewer system through a manhole at the construction site. On July 8, 2013, the Michigan Department of Transportation (MDOT) instructed Pamar to build up manhole "chimneys" around the exposed manholes to prevent water from infiltrating the sanitary sewer system, and Pamar complied. However, at some point, a Pamar employee moved a brick from a manhole chimney, allowing water to again seep into the manhole. Following the substantial rains on July 6 and July 8, plaintiffs experienced backups in their homes, which allegedly caused property damage.

Plaintiffs initially filed suit solely against Pamar, alleging that Pamar's negligence at the construction site allowed water to enter the sewer system and caused the backups. However, after Pamar filed a notice of non-party fault, plaintiffs amended their complaint to include the Bad Axe defendants. With regard to the Bad Axe defendants, plaintiffs alleged there were "systematic problems and insufficiencies of its sanitary sewer system" that were a substantial proximate cause of the backups into plaintiffs' homes. The Bad Axe defendants moved for summary disposition under MCR 2.116(C)(7), which the trial court denied. The Bad Axe defendants now appeal as of right.

## II. ANALYSIS

On appeal, the Bad Axe defendants argue that the trial court erred by denying their motion for summary disposition. According to the Bad Axe defendants, plaintiff failed to present evidence to establish material questions of fact regarding the applicability of the sewer system event exception to governmental immunity because there is no evidence: (1) that there was a defect in the sewer system, (2) that the Bad Axe defendants knew, or should have known,

of the defect, (3) that the Bad Axe defendants failed to take reasonable steps in a reasonable time to remedy the defect, and (4) that the defect was a substantial proximate cause of the sewer system event and the damage to plaintiffs' properties. In contrast, both plaintiffs and Pamar contend that the trial court properly denied the motion for summary disposition because material questions of fact remain.

## A. STANDARDS OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006). The applicability of governmental immunity is also reviewed de novo. *Id*. When claims are barred by "immunity granted by law," summary disposition is properly granted under MCR 2.116(C)(7). "When it grants a motion under MCR 2.116(C)(7), a trial court should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *McLain v Lansing Fire Dep't*, 309 Mich App 335, 340; 869 NW2d 645 (2015). "If no material facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Willett*, 271 Mich App at 45 (quotation marks, citation, and brackets omitted).

## B. THE SEWER SYSTEM EVENT EXCEPTION

"[T]he government tort liability act (GTLA), MCL 691.1401 *et seq.*, broadly shields and grants to governmental agencies immunity from tort liability when an agency is engaged in the exercise or discharge of a governmental function." *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). There are exceptions to the GTLA. *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 156; 615 NW2d 702 (2000). However, these exceptions must be narrowly construed. *Id*. at 158.

One of the exceptions to governmental immunity is the sewage disposal system event exception set forth in MCL 691.1416 *et seq*. Specifically, MCL 691.1417(2) provides that "[a] governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency." To avoid governmental immunity under this exception, there are several requirements a claimant must satisfy. *Linton v Arenac Co Rd Com'n*, 273 Mich App 107, 113; 729 NW2d 883 (2006). Among these requirements, a claimant seeking compensation for property damage from a sewage disposal system event must show *all* of the following elements:

(a) The governmental agency was an appropriate governmental agency.

(b) The sewage disposal system had a defect.

(c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.

(d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.

(e) The defect was a substantial proximate cause of the event and the property damage or physical injury. [MCL 691.1417(3); *Willett*, 271 Mich App at 49.].

As defined by statute, the term "defect" refers to "a construction, design, maintenance, operation, or repair defect." MCL 691.1416(3). Subject to certain caveats, a "sewage disposal system event" is "the overflow or backup of a sewage disposal system onto real property." MCL 691.1416(k). And, notably, for purposes of the sewer disposal system event exception, the phrase "substantial proximate cause" "means a proximate cause that was 50% or more of the cause of the event and the property damage or physical injury." MCL 691.1416(*l*).

In the trial court and on appeal, the Bad Axe defendants have challenged whether plaintiffs have sufficient evidence to establish four of these elements. However, in our judgment the dispositive question in this case is whether, viewing the record in a light most favorable to plaintiff, reasonable minds could conclude that the alleged defects identified by plaintiffs and Pamar constitute a "substantial proximate cause" of the sewer system disposal event and the damage to plaintiffs' property. In this regard, we note that plaintiffs and Pamar have identified a laundry list of purported defects in the Bad Axe sewer system, including the facts that the aging vitrified clay system had leaks in the pipes, deteriorating concrete around manholes, an obstruction in the system in the form of a large rock, leaking capped connections and a hole in a pipe that are allowing groundwater to enter the system, as well as tree roots and mud in the system.[1] Plaintiffs and Pamar have also offered evidence—including testimony and video of the sewer system—to support the existence of these conditions. However, even assuming that these conditions amount to defects within the meaning of MCL 691.1416(3),[2] we fail to see any evidence in the lower court record that would allow reasonable minds to conclude that these alleged defects were "a proximate cause that was 50% or more of the cause of the event and the property damage." MCL 691.1416(*l*).

"[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001) (citation omitted). And, when it is a plaintiff's burden to show causation, the plaintiff must "set

---

[1] We note that there is also evidence of a foundation drain on the property of one of the plaintiffs and that there is evidence that some of the plaintiffs have had roots in their service connections roto-rooted. However, these potential defects on plaintiffs' properties cannot result in liability for the Bad Axe defendants. See MCL 691.1416(k)(*i*) and (*ii*).

[2] For purposes of our analysis, we will also assume that the Bad Axe defendants knew, or should have known, of these defects, MCL 691.1417(3)(c), and that the Bad Axe defendants failed to take reasonable steps in a reasonable time to remedy these defects, MCL 691.1417(3)(d).

forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." *Skinner v Square D Co*, 445 Mich 153, 174; 516 NW2d 475 (1994). While causation may be shown circumstantially, "a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Id*. at 164. The distinction between reasonable inference and impermissible conjecture has been explained as follows:

> As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence. [*Id*. (citation omitted].

In other words, a "mere possibility" of causation is not enough to establish a question for the jury. *Id*. at 165. If reasonable minds could differ regarding the proximate cause of an event, the question should be submitted to the factfinder. *Terry v Detroit*, 226 Mich App 418, 430; 573 NW2d 348 (1997). However, "litigants do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess." *Skinner*, 445 Mich at 174.

Here, plaintiffs' causation theory is that the sewer system was in a state of disrepair, unfit to handle the July rainfalls, and that Pamar exacerbated "the effect of the existing poor condition of the sewer system" such that "[t]ogether, the poorly maintained sewer system and the negligence of" Pamar caused the flooding in plaintiffs' homes. Under plaintiffs' theory of causation, there were multiple causes that contributed to the sewer backups, including the rainstorm, an excavated construction zone that allowed rainwater to infiltrate the sewer, as well as existing defects in the sanitary sewer. However, on the record before us, among these various alleged causes, it would be pure speculation to suppose that any defects in the sewer system were "a proximate cause that was 50% or more of the cause of the event and the property damage." MCL 691.1416(*l*).

Notably, *plaintiffs* obtained an expert to investigate the cause of the flooding, and this expert did not address the defects in the sewer system or apportion any responsibility for the flooding to the defects in the system. Instead, plaintiffs' expert opined that Pamar failed to follow the applicable rules and procedures, and the expert attributes the entry of water into the sewer system to Pamar's actions. While noting that the rainfall was "significant," the expert concluded the amount of rainfall would have been within the storm system's designed capacity "had the appropriate grading and maintenance activities taken place" by Pamar. Indeed, the expert stated that even one displaced manhole cover would permit water infiltration into the sewer system in excess of the specifications that the sewer was designed to handle.

Plaintiffs do not deny that Pamar was negligent and that Pamar's negligence in removing manhole covers allowed water to enter the system.[3] Instead, plaintiffs maintain that Pamar's conduct exacerbated the poor condition of the sewer system. The problem with plaintiffs' causation theory is that they provide no evidence apportioning causation between these multiple alleged causes and, in particular, no evidence to establish that the defects in the system were a 50% cause. Specifically, plaintiffs surmise that leaking and obstructions in the sewer contributed to the flooding in their homes; but, they offer no evidence in support of this contention. There is no indication that, absent Pamar's conduct and the substantial rainfalls, the flooding in plaintiffs' basement would have occurred.[4] Further, while there is evidence that Pamar's conduct resulted in excessive water entering the system, none of the experts quantified, or even considered, the role of any preexisting sewer defects in the backups and the damage to plaintiffs' properties. There is simply no evidence establishing how—and to what extent—these defects interacted with Pamar's conduct and the rainfall to cause flooding in plaintiffs' homes.

At best, viewing the evidence in a light most favorable to plaintiffs, there is evidence of defects in the system and the possibility that, along with other causes, these defects may have played some unspecified role in the flooding. But, it is not enough to say that the defects might be a contributing cause. A "mere possibility" of causation is not enough to establish a question for the jury, *Skinner*, 445 Mich at 165, and "litigants do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess," *id*. at 174. Absent a logical basis on which to conclude that the defects contributed to the flooding and to assess the portion of the backup and property damage attributable to the alleged defects, reasonable minds could not conclude that the alleged defects were 50% or more of the cause of the event and the property damage." MCL 691.1416(*l*). Cf. *Fingerle v Ann Arbor*, 308 Mich App 318, 341; 863 NW2d 698 (2014) (O'CONNELL, J., concurring).[5] Consequently, because

---

[3] Pamar has also retained an expert. Pamar's expert also did not state that defects in the sewer caused the flooding. Instead, he opined only that Pamar was not negligent and that Pamar should not be held responsible for the unforeseen amount of rain.

[4] In its discussion of causation, Pamar asserts that there were other backups in the City, and that this shows that the defects in the sewer, and not Pamar, were responsible for plaintiffs' floods. To the extent that some of the plaintiffs experienced backups prior to having their service lines roto-rooted, these defects in the service lines cannot result in liability for the Bad Axe defendants. See MCL 691.1416(k)(*i*) and (*ii*). With regard to any other back-ups, the details and circumstances surrounding these purported backups are unknown, meaning that they do not support the assertion that plaintiffs' flooding would have occurred absent Pamar's conduct and the unusually heavy rainfalls.

[5] The majority opinion in *Fingerle* was vacated by *Fingerle v Ann Arbor*, 498 Mich 910; 870 NW2d 920 (2015). However, the Supreme Court affirmed this Court's decision in *Fingerle* "for the reasons stated in [Judge O'Connell's] concurring opinion, *to wit,* that the plaintiff cannot make the requisite showing of 'substantial proximate cause.' " *Fingerle*, 498 Mich at 910. In his concurrence, Judge O'Connell explained that there were multiple causes of the flooding in *Fingerle*, including an allegedly defective storm sewer, the construction of an egress window, and an unusually intense rainstorm. *Fingerle*, 308 Mich App at 340 (O'CONNELL, J.,

plaintiffs cannot establish the applicability of the sewer system disposal event exception to governmental immunity, the trial court erred by denying the Bad Axe defendants' motion for summary disposition under MCR 2.116(C)(7).

Reversed and remanded for entry of summary disposition in favor of the Bad Axe defendants.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Kirsten Frank Kelly

---

concurring). Similar to the present case, the plaintiff in *Fingerle* failed to provide any evidence that the city's allegedly defective storm sewer "exacerbated" the flooding. *Id.* Further, as in this case, the plaintiff's experts in *Fingerle* did not address the multiple causes of the flooding, and did not opine, based on a consideration of the multiple causes, that the alleged defect was more than a 50% cause of the flooding. *Id.* at 341. On these facts, Judge O'Connell concluded that, "no reasonable mind could conclude that the relief storm sewer was a substantial proximate cause of the basement rainwater." *Id.* at 341-342. The same is true in the current case.