*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

REGINA MENDOZA,

      Plaintiff-Appellant,

v

GARY ROBINSON and RAYMOND
CANTERBURY,

      Defendants-Appellees.

UNPUBLISHED
March 3, 2020

No. 346579
Wayne Circuit Court
LC No. 17-012887-CZ

Before: REDFORD, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting summary disposition in defendants' favor. We affirm.

On October 25, 2015, plaintiff, who is deaf, dined and drank alcohol at a restaurant in Gibraltar with two companions. She paid most of the $24 bill, but purportedly had to go to her car to get the remaining $4 owed. According to plaintiff, she tried to communicate this to the waitress, but faced difficulty due to her deafness. The waitress did not permit plaintiff to leave the restaurant and she or another member of the restaurant staff called 911, reporting that plaintiff refused to pay her bill. As a result, defendants, two Gibraltar police officers, appeared at the restaurant and made contact with plaintiff and her companions. Plaintiff asserts that she attempted to communicate with the officers to explain that she was going to get the remaining amount owed out of her car, but again faced difficulty to due her deafness. Defendants arrested plaintiff (and both of her companions) and took her to jail on allegations of defrauding an innkeeper and disorderly conduct. Plaintiff was released the same day and all charges against her were dismissed in December 2015. Plaintiff thereafter initiated the instant action against the arresting officers, asserting claims of false arrest/false imprisonment and malicious prosecution. Defendants moved for summary disposition pursuant to MCR 2.116(C)(7) and (10), claiming that plaintiff's claims were barred by governmental immunity and that she could not establish a lack of probable cause for her arrest and the charges filed against her. The trial court granted the motion based upon MCR 2.116(C)(7).

We review a trial court's decision on a motion for summary disposition de novo. *Diamond v Witherspoon*, 265 Mich App 673, 680; 696 NW2d 770 (2005). Summary disposition is appropriate under MCR 2.116(C)(7) "because of release, payment, prior judgment, [or] immunity granted by law." MCR 2.116(C)(7). In reviewing a motion under this subrule, a trial court should consider "all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015), quoting *McLain v Lansing Fire Dep't*, 309 Mich App 335, 340; 869 NW2d 645 (2015).

On appeal, plaintiff contends that the trial court erred in granting summary disposition in favor of defendants because they acted in bad faith in committing intentional torts against her. We disagree.

The Governmental Tort Liability Act, MCL 691.1407, *et seq*. (GTLA), provides immunity to governmental officers, agents, and employees in pertinent part, as follows:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

> (3) Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986. [MCL 691.1407]

Because the GTLA explicitly maintains intentional tort law as it existed before, July 7, 1986, governmental employees enjoy qualified immunity for intentional torts. *Odom v Wayne Co*, 482 Mich 459, 461; 760 NW2d 217 (2008). However, in order to receive qualified immunity for intentional torts, a governmental employee must:

> raise governmental immunity as an affirmative defense and establish that (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts

were discretionary, rather than ministerial, in nature.  [*Id*. at 461]

There is no dispute that defendants, as police officers, were governmental employees. Defendants also undisputedly raised governmental immunity as an affirmative defense.  Plaintiff asserts, however, that defendants could not reasonably believe they were acting within the scope of their employment and were not acting in good faith because they had no probable cause to arrest her.

In order to be reasonable, an arrest must be justified by probable cause, which exists "where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996).  The deposition testimony of defendants and plaintiff establishes that defendants had probable cause to arrest plaintiff.

Plaintiff was arrested for defrauding an innkeeper and disorderly conduct.  Defrauding an innkeeper is a misdemeanor pursuant to MCL 750.292:

> Any person who shall put up at any hotel, motel, inn, restaurant or cafe as a guest and shall procure any food, entertainment or accommodation without paying therefor, except when credit is given therefor by express agreement, with intent to defraud such keeper thereof out of the pay for the same, or, who, with intent to defraud such keeper out of the pay therefor, shall obtain credit at any hotel, motel, inn, restaurant or cafe for such food, entertainment or accommodation, by means of any false show of baggage or effects brought thereto, is guilty of a misdemeanor.

Defendant Canterbury testified at his deposition that dispatch sent him to the Pranks on Marsh restaurant on the date of the incident, relating that a 911 call had been received from that location concerning a male who had been observed hitting a female in the bar area [CDep, pg. 28][1].  Canterbury had police dispatch call the bar and dispatch thereafter told him that a person at the restaurant indicated that there was a disturbance at the restaurant and that two people there were refusing to pay their bill [CDep, pg. 30].  Canterbury testified that when he arrived at the restaurant he saw plaintiff and her boyfriend standing at the front door [CDep, pg. 31].

Canterbury testified that when plaintiff and her boyfriend saw him arrive at the restaurant, they quickly went back inside [CDep, pg. 33].  Officer Robinson entered the restaurant through the front door and Canterbury watched the back door of the restaurant [CDep, pg. 34].  In just a minute or two, Officer Robinson came out the front door with plaintiff and her boyfriend (and a third companion) [CDep, pg. 35].

Canterbury testified that in his conversations with staff at the restaurant, the staff indicated that all three had been drinking [CDep, pg. 41].  Their bill was for $24 and the bartender and waitress told Canterbury that $20 had been left on the table and that they believed the three were

---

[1] "CDep, pg…" refers to the May 1, 2018 deposition testimony of defendant Raymond Canterbury.

trying to leave without paying the rest [CDep, pg. 41]. Canterbury went outside and told plaintiff's ex-boyfriend that all three were going to jail over $4 and asked if he had the money to pay the bill [CDep, pg. 43]. The ex-boyfriend said he did not know where his wallet was. He began getting very loud and indicated he did not have the money [CDep, pg. 43]. Canterbury spoke to the third person with them and that person indicated that he had no money [CDep, pg. 43].

According to Canterbury, when they were in the restaurant parking lot, plaintiff was very loud, and she and her boyfriend were yelling at each other [CDep, pg. 37-38]. With respect to plaintiff, Canterbury believed she was intoxicated based on the way she was acting, being loud, and having bloodshot eyes [CDep, pg. 46-47]. While speaking to Canterbury, plaintiff was still loud and her arms were flailing around [CDep, pg. 47]. He had to tell her numerous times to be quiet [CDep, pg. 48]. Canterbury asked plaintiff if she had money to pay the restaurant bill and she patted her pockets indicating not on her person, and then indicated she had the money in her car [CDep, pg. 40]. Canterbury allowed her to go to her car, and plaintiff searched through her car, then came back, patted her pockets and put her hands out with her palms up, indicating she still had no money [CDep, pg. 40].

Canterbury spoke to the staff and indicated it was only $4, but the staff said they wanted the money because plaintiff and her ex-boyfriend had done this before [CDep, pg. 43]. Canterbury was the supervisor on the day of the incident at issue and it was his decision to arrest plaintiff [CDep, pg. 13]. Ultimately, all three were arrested for defrauding an innkeeper and disorderly conduct [CDep, pg. 44].

Officer Gary Robinson similarly testified at his deposition that he was dispatched to the restaurant for some type of disturbance [RDep, pg. 38][2]. When he walked into the restaurant, an employee pointed at three people (one of which was plaintiff) purportedly involved in the disturbance, so he told them all to come outside [RDep, pg. 39]. They came outside and plaintiff and her ex-boyfriend were speaking loudly [RDep, pg. 43-44]. Robinson testified that he knew plaintiff was deaf [RDep, pg. 31]. He had contact with her several times before the incident at issue and they had always conversed because she can speak out loud and read lips [RDep, pg. 31]. Sometimes she spoke loud during her interactions with him and sometimes her voice level was normal [RDep, pg. 45].

Robinson testified that when plaintiff and her companions went outside, Canterbury was there and began speaking with witnesses [RDep, pg. 45]. Plaintiff was outside causing a scene, talking loudly and waving her arms [RDep, pg. 53]. He testified that plaintiff was intoxicated [RDep, pg. 29-30]. Robinson testified that at that point, Robinson was only assisting and did not do anything to determine whether plaintiff had committed a crime [RDep, pg. 48]. Canterbury made the decision to arrest plaintiff for not paying her tab and for disorderly conduct [RDep, pg. 50].

---

[2] "RDep, pg…." refers to the May 1, 2018 deposition of defendant Gary Robinson.

Plaintiff testified at her deposition to a different series of events. According to plaintiff, she paid for the food that the three ate, but still owed $5.00 to pay for shots that her ex-boyfriend had ordered [MDep, pg. 34-35][3]. According to plaintiff, her waitress would not let her leave the bar to get $5.00 out of her car and called the police on her [MDep, pg. 38-39]. She went to the restroom inside the bar and when she came out, the police were there [MDep, pg. 39]. Plaintiff testified that with her ex-boyfriend acting as an interpreter, she told one of the officers that she had money in her car [MDep, pg. 40]. According to plaintiff, the officer immediately arrested her, without asking her any questions [MDep, pg. 42-43, 70].

Despite the inconsistencies between plaintiff and the officers' testimony about the specific communications and actions, the undisputed fact is that the officers were summoned to the restaurant to address what they had been told was a disturbance, and later were also advised that plaintiff and her companions did not pay their entire bill. Plaintiff also admitted that she did not have the money on her person to pay the remaining amount owed on the bill. Thus, the officers had a reasonable belief that plaintiff had procured food and/or drinks at the restaurant without paying for all of it, and that she had an "intent to defraud such keeper thereof out of the pay for the same." MCL 750.292. The facts and circumstances within defendants' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a person of reasonable caution in the belief that the offense of defrauding an innkeeper had been or was being committed. *Champion*, 452 Mich at 115. They thus had probable cause to arrest plaintiff.

The information conveyed to the officers by restaurant staff, combined with their own observations, also establishes that the officers could reasonably believe that plaintiff was committing the offense of disorderly conduct. Disorderly conduct is prohibited by MCL 750.167. That statute provides that a person is a disorderly person if he or she is intoxicated in a public place and is acting in a manner that causes a public disturbance. MCL 750.167(1)(e).

Canterbury and Robinson both testified that were summoned to the restaurant on a call of a disturbance. Robinson testified that when he entered the restaurant, staff pointed out plaintiff and her companions as being the reason why the 911 call had been placed. Both officers testified that plaintiff was yelling while she was in the restaurant parking lot and that her arms were flailing. They also both testified that plaintiff appeared intoxicated, and that people were coming out of the restaurant and into the parking lot during the incident. According to Canterbury, he had to tell plaintiff numerous times to be quiet.

While plaintiff testified at her deposition that she did not create a disturbance [MDep, pg. 71], she also admitted that she and her ex-boyfriend were arguing in the restaurant [MDep, pg. 36, 38]. Plaintiff further testified that as a deaf person, she speaks loudly [MDep, pg. 49].

As much as she would like to attribute the matter to a lack of ability to effectively communicate due to her deafness, plaintiff testified that she is able to read lips and had a hearing aid in one ear to help her hear somewhat. Moreover, Canterbury testified that he had between five and ten prior contacts with plaintiff (as well as her boyfriend) and thus knew she could read lips

---

[3] "MDep, pg...." refers to the April 27, 2018 deposition of plaintiff Regina Mendoza.

[CDep, pg. 23, 24]. He testified that there was a little difficulty communicating with plaintiff, but he could understand what she was saying and could communicate with her. [CDep, pg. 23, 24]. Canterbury testified that he spoke with plaintiff during several prior contacts and through her responses to him, she appeared to understand what he was saying. Canterbury further testified that he knew plaintiff understood him on the date of the incident at issue because she would stop talking and yelling when ordered to do so [CDep, pg. 48]. Robinson also testified that he knew plaintiff was deaf [RDep, pg. 31]. He, too, had contact with her several times before the incident at issue and they had always conversed with plaintiff speaking out loud and reading lips [RDep, pg. 31]. Plaintiff admitted at her deposition that she had prior and post-incident contact with at least one of the two officers [MDep, pg. 28]. As a result, it appears that the parties were able to communicate. The defendants' testimony is thus sufficient to establish that they reasonably believed that plaintiff was intoxicated and acting in a manner that caused a public disturbance and provided them probable cause to arrest her for that crime. MCL 750.167(1)(e).

The officers' having had probable cause to arrest plaintiff, it is clear that their acts of arresting plaintiff for defrauding an innkeeper and disorderly conduct were undertaken during the course of their employment, and they reasonably believed they were acting within the scope of their authority. The first prong establishing that the officers were entitled to qualified immunity has thus been met. *Odom*, 482 Mich at 461. The second prong, that the acts were undertaken in good faith, has also been met. *Id*.

A lack of good faith with respect to qualified governmental immunity has been defined as "malicious intent, capricious action or corrupt conduct" or "willful and corrupt misconduct." *Odom*, 482 Mich at 474. A proponent of individual immunity must establish that he acted without malice. *Id*. at 475. The good-faith element is subjective in nature and claiming or showing that an officer made a mistake does not defeat an immunity defense because the defense protects an officer's honest belief and good-faith conduct. *Latits v Phillips*, 298 Mich App 109, 115; 826 NW2d 190 (2012). Thus, as long as the proponents, here the officers, can show that they had a good-faith and honest belief that they were acting properly in arresting plaintiff, they are entitled to the protections of governmental immunity regardless of whether they were, as asserted by plaintiff, ultimately incorrect in that belief. There is no evidence in this case to show that defendants did not have such a good-faith and honest belief and plaintiff has directed this Court to none.

The third and final prong necessary for the officers to claim qualified immunity is that the acts be discretionary, rather than ministerial, in nature. *Odom*, 482 Mich at 461. Ministerial acts "constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice" and the "execution of an act once a decision has been made is also ministerial in nature. *Id*. at 476 (citations omitted). Discretionary acts, in contrast, require personal decision and judgment. *Id*. (citations omitted). A determination of whether there is probable cause to arrest someone is a discretionary act. *Id*.

In sum, defendants raised governmental immunity as an affirmative defense, and their challenged acts were undertaken during the course and in the scope of their authority as police officers. Defendants also had probable cause to arrest plaintiff for defrauding an innkeeper and disorderly conduct and, thus, their challenged acts were undertaken in good faith and were also

discretionary in nature.  *Odom*, 482 Mich at 461.  Defendants were thus entitled to governmental immunity in this matter and the trial court appropriately granted summary disposition in their favor pursuant to MCR 2.116(C)(7).

Affirmed.

/s/ James Robert Redford
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto