*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD A. MARINUCCI,

      Plaintiff-Appellant,

v

CHARTER TOWNSHIP OF NORTHVILLE,
ROBERT R. NIX, MARVIN SNIDER, DEBRA
WILHELM, JOHN E. WERTH, MARJORIE F.
BANNER, MARINA NEUMAIER, AND SUE A.
HILLEBRAND,

      Defendants-Appellees.

UNPUBLISHED
February 26, 2019

No. 340579
Wayne Circuit Court
LC No. 16-006425-CZ

Before: JANSEN, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

In this general civil action arising out of plaintiff Richard Marinucci's termination of employment as chief of the Northville Township Fire Department, plaintiff appeals as of right the trial court's opinion and order granting summary disposition to defendants pursuant to MCR 2.116(C)(10). Plaintiff contends that he submitted evidence creating a genuine issue of material fact to support each of his various claims against defendants, being Charter Township of Northville and several township officials. We affirm the trial court's order.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff served as chief of the Northville Township Fire Department from 2008 until 2016, first as an independent contractor and then as an employee. On March 15, 2016, he was asked to resign following an administrative meeting held to discuss the results of a "surprise" audit of the township's finances. The audit revealed that vendor payments issued by the township were being sent to plaintiff's home address, and the payments were not related to the employee payroll. The township paid for specialized firefighter training from various

organizations. Plaintiff was active in many of these organizations, including some to which he sent firefighters for training. Plaintiff's wife handled administrative functions for some of these entities, including receiving checks for the training provided.[1] The checks were being sent to plaintiff's and his wife's home address. The auditors noted that plaintiff's act of receiving the checks at his home address constituted a "related party transaction" that could negatively affect future audits. Defendant John E. Werth, the director of public safety, was aware of these transactions, but defendant Marvin Snider, the township supervisor, was not. When Snider attempted to come to an agreement with plaintiff regarding the related party transactions, plaintiff suggested that Northville Township cease participation in the fire safety organizations. Snider felt this would detrimentally affect the Northville Township Fire Department, simply to allow plaintiff and his wife to remain involved in those organizations and receive checks at home. Defendant Snider concluded that plaintiff did not have the fire department's best interests in mind, and asked him, through Werth, to resign, in order to give him an opportunity to avoid being fired. For purposes of this appeal, defendants do not dispute that plaintiff's ultimate departure was not voluntary.

Plaintiff filed the instant lawsuit on May 19, 2016. He alleged a breach of a legitimate expectation of employment absent just cause for termination (Count I), termination in violation of public policy (Count II), violation of his right to due process when depriving him of a property interest in continued employment (Count III), age discrimination in violation of the Elliot Larson Civil Rights Act (Count IV), violation of the Open Meetings Act (Count V)[2], defamation (Count VI), and false light (Count VII). On January 25, 2017, defendants moved for summary disposition of all of plaintiff's claims. Following briefing and oral argument, the trial court granted the motion in an August 16, 2017 opinion and order.

## II. STANDARD OF REVIEW

Defendants moved for summary disposition pursuant to MCR 2.116(C)(10). This Court reviews de novo challenges to a trial court's decision on a motion for summary disposition. *Wood v Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018). "A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). This Court considers the "pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted). Summary disposition "is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted). "A genuine issue of material fact exists when

---

[1] Plaintiff testified that his wife worked in the capacity of executive secretary for the associations, earning around $100,000 per year.

[2] The trial court previously dismissed Count V, as well as plaintiff's claims against four Northville Township board members named in plaintiff's complaint. Those rulings by the trial court are not at issue on appeal.

the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Plaintiff argues that the trial court erred by granting defendants' motion for summary disposition because he had established genuine issues of material fact for trial. We address each of plaintiff's claims in turn.

## A. AT WILL VERSUS JUST-CAUSE EMPLOYMENT

Plaintiff first argues that the trial court erred by granting defendants' motion for summary disposition because he was not an at-will employee, and even if he were, defendants assured him that he would only be fired for just cause. We disagree.

"Generally, and under Michigan law by presumption, employment relationships are terminable at the will of either party." *Lytle v Malady*, 458 Mich 153, 163; 579 NW2d 906 (1998). Such employment is "at-will" employment. See *id*. Conversely, some employment contracts may provide limitations on an employer's right to terminate employment, and may state that an employee may only be terminated for "just cause." See *Thomas v John Deere Corp*, 205 Mich App 91, 94; 517 NW2d 265 (1994). Defendants contend that plaintiff was an at-will employee based on a provision in an employment manual given to plaintiff when he was hired as Northville Township's fire chief. The provision states as follows:

> Except as provided by any applicable collective bargaining agreements, all employees of the Township are employed for [an] indefinite period of time and their employment may be terminated at any time without previous notice, and with or without cause, by either party.

Plaintiff agreed that he signed a form acknowledging receipt of the employment manual. The acknowledgment form stated, "these terms and conditions . . . do not establish or create any contractual obligation, express or implied, or any other obligation on either Northville Township's part or [plaintiff's] to maintain my employment for any period of time." Plaintiff's acknowledgment of the employment manual indicates that he agreed to be bound by its policies, and thus, that he was an at-will employee.

Regardless, plaintiff argues that certain statements made to him before and after defendants hired him created a legitimate expectation that defendants would not terminate his employment without just cause. In *Nieves v Bell Indus, Inc*, 204 Mich App 459, 462-463; 517 NW2d 235 (1994), this Court stated:

> Under the legitimate expectations theory, a party may overcome the presumption of employment at will by establishing that the employer's policies and procedures have become a legally enforceable part of an employment relationship if such policies and procedures instill legitimate expectations of discharge for just cause only. The courts must determine whether a promise has been made and whether the promise is reasonably capable of instilling in employees a legitimate expectation of just-cause employment.

When questioned regarding whether he remembered his supervisor, defendant John E. Werth, telling him that he would only be terminated for just cause, plaintiff stated as follows:

> From the beginning of my employment, I was told that as long as I did my job, I would have nothing to worry about, that [defendant Werth] and [defendant] Snider could be trusted to evaluate me on my job performance, and that there would be—nothing arbitrary that would ever be done, as long as I was meeting the job requirements, that I had nothing to worry about regarding my employment here.

"Statements made by management personnel to employees may create a legitimate expectation of termination for cause only; the expectation must be based on both a subjective and objective belief that the employee has been hired under a just-cause contract." *Clement-Rowe v Mich Health Care Corp*, 212 Mich App 503, 506; 538 NW2d 20 (1995). Although plaintiff suggests that he was told he would have "nothing to worry about" so long as he adhered to his job requirements, plaintiff provides no evidence that he was ever told that he would only be fired for just cause. Thus, there is "no evidence suggesting that the parties ever discussed job security in the sense of requiring just cause" for the termination of plaintiff's employment. *Rood v Gen Dynamics Corp*, 444 Mich 107, 127; 507 NW2d 591 (1993). Furthermore, as previously noted, plaintiff signed the acknowledgment form stating that defendants had no obligation to maintain his employment for any given period of time, indicating that he was an at-will employee. Based on the record evidence, there is no material question of fact as to whether defendants had instilled in plaintiff an objective belief that he could only be terminated for just cause.

## B. PUBLIC POLICY

Plaintiff next argues that the termination of his employment was against public policy because defendant Snider had no authority to unilaterally terminate him. We disagree.

An exception to the general presumption that employment relationships are terminable at-will exists " 'based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable.' " *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014), quoting *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695; 316 NW2d 710 (1982). The following grounds have been recognized as exceptions to the at-will employment rule:

> (1) [E]xplicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty . . . (2) where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course of employment . . . and (3) where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment . . . . [*Landin*, 305 Mich App at 524.]

Plaintiff contends that defendant Snider, as township supervisor, was required to seek the approval of the township supervisory board in order to terminate his employment. Plaintiff directs this Court to an opinion of the attorney general, which states that, "[i]n the absence of a township ordinance or delegation of authority by the township board, a charter township

supervisor may not unilaterally terminate the employment of a township employee without *prior approval of the township board.*" OAG, 2001, No. 7,094, p 1 (November 27, 2001). Opinions of the attorney general are not binding on this Court, but may be considered as persuasive authority. *Mich Ed Ass'n Political Action Comm v Secretary of State*, 241 Mich App 432, 441-442; 616 NW2d 234 (2000).

Defendants acknowledge the opinion of the attorney general, but state that a Northville Township ordinance delegates the authority to make employment decisions to defendant Snider. Northville Township Ordinance 92, ch 12, § 5(b) states that the township superintendent "shall direct and supervise all Township Departments unless separate supervision for a department is provided by this ordinance or another duly adopted ordinance of the Township. The Superintendent shall be responsible for all human resource matters or delegate such duties to some other Township officer or employee." Defendants agree that defendant Snider's responsibility for human resource matters encompassed decisions regarding the employment of township employees, and plaintiff has not provided any evidence to the contrary. Thus, defendant Snider had the authority to terminate plaintiff's employment without seeking the board's approval.

## C. DUE PROCESS

Plaintiff argues that he had a property interest in his continued employment and that the termination of his employment violated his right to procedural due process. We disagree.

Plaintiff asserts that, because he was a public employee subject to termination only for just cause, he was entitled to procedural due process. As discussed above, plaintiff's employment was at-will. In addition,"[p]ublic employment in and of itself is not a property interest automatically entitling the employee to procedural due process." *Manning v Hazel Park*, 202 Mich App 685, 694; 509 NW2d 874 (1993). Public employees have a property interest in continued employment only if the employer has promised not to terminate the employee but-for just cause. *Id*. The same property interest is not applicable where the employee holds an at-will employment position. *Id*. "Therefore, a public employer need not comply with procedural due process in terminating an employment interest . . . ." *Id*. Because plaintiff was an at-will employee, he did not have a property interest in his continued employment, and thus, he was not entitled to procedural due process. See *id*.

## D. AGE DISCRIMINATION

Plaintiff also argues that defendants' termination of his employment was motivated by age discrimination in violation of the Elliot Larsen Civil Rights Act ("CRA"), MCL 37.2101 *et seq*. We disagree.

Under the CRA, an employer is not permitted to "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a). Plaintiff was 63 years old when his employment was terminated. Plaintiff was required to prove, either by direct or circumstantial evidence, that defendants committed age discrimination. See *Hazle v Ford*

*Motor Co*, 464 Mich 456, 462-463; 628 NW2d 515 (2001). In the trial court, plaintiff did not present direct evidence of age discrimination. Instead, he presented a prima facie case of age discrimination. To establish a prima facie case of age discrimination, plaintiff was required to show that "(1) [he] belongs to a protected class, (2) [he] suffered an adverse employment action, (3) [he] was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination." *Id*. at 463.

Defendants admitted in the trial court that plaintiff properly established a prima facie case of age discrimination. Thus, "the burden shift[ed] to . . . defendant[s] to articulate a legitimate nondiscriminatory reason for the adverse employment action taken." *Major v Newberry*, 316 Mich App 527, 541; 892 NW2d 402 (2016). Defendants have consistently argued that plaintiff was terminated because he suggested that Northville Township cease its participation in the fire safety organizations that plaintiff belonged to, which would have allowed plaintiff and his wife to continue receiving checks for expenses from Northville Township at their home address. Defendant Snider believed that this suggestion indicated that plaintiff did not have Northville Township's best interests in mind because leaving the fire safety organizations would have detrimentally affected the Northville Township Fire Department, which participated in trainings and other events through the organizations. Plaintiff's behavior suggested to defendant Snider that plaintiff was willing to allow the fire department to be negatively impacted in order to maintain his membership in those organizations.

In order to prevail on his age discrimination claim, plaintiff is required to "present evidence that the explanation provided by his . . . employer constituted a pretext for discrimination." *Newberry*, 316 Mich App at 542. A plaintiff may establish that a defendant's rationale for terminating employment is a pretext in the following ways:

> "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." [*Id*., quoting *Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998).]

Plaintiff argues that defendants' reason for terminating his employment was pretext, and he observes that defendant Snider stated that the related party transactions involving plaintiff's wife, who received checks from Northville Township at the home address she shared with plaintiff, were a "material deficiency in [the] audit, which is in auditor's terms a black flag." To the contrary, Beth Bialy, who audited Northville Township's finances, stated that she never told Snider that this practice constituted a "material deficiency," or that Northville Township would fail its audit if the practice were permitted to continue. Specifically, Bialy explained:

> The only suggestion really is that those [related party] relationships need to be disclosed. You can't waive a related party relationship or have the checks go to someone else when ultimately there's still a related party relationship there.
>
> So number one, they need to be disclosed. And everyone, you know, management, governance, it would rise to that level for them to decide whether or not they wanted to continue that relationship. And if the dollars were significant,

they would have to be in the financial statement. And that's really the only impact on the audit, is that you have to disclose materials, significant related party transactions.

Plaintiff suggests that, in light of the fact that the related party transactions had no major effect on the audit, defendant Snider's negative reaction to the information regarding the related party transactions was contrived as an excuse to terminate plaintiff's employment. However, regardless of whether defendant Snider misunderstood the impact of the related party transactions on the audit, the actual effect on the audit was never explicitly given as a reason for terminating plaintiff's employment. Rather, plaintiff was fired because defendant Snider believed plaintiff was placing personal gain over the needs of Northville Township and the fire department. At the time of the audit, defendant Snider had been unaware that Northville Township was sending checks to plaintiff's wife at plaintiff's home address, and he believed that doing so was improper and would lead to issues with future audits based on the information he received from Bialy. Bialy believed that the related party transactions pertaining to plaintiff and his wife would need to be disclosed in future financing statements because, although the relationship had not been a material defect with regard to the current audit, the relationship could cause issues in future audits.

At the meeting held before plaintiff's termination, defendant Snider attempted to come to an agreement with plaintiff regarding the related party transactions and any issues that might arise in relation to the information that Northville Township was sending checks made out to a number of fire safety organizations to plaintiff's home address. Defendant Snider suggested that Northville Township "cease the checks going to [plaintiff's home address]," but "[plaintiff] was reluctant to give up the manner in which these training dollars were being transferred." Instead of agreeing to send the checks to a different address, which would have removed the suggestion of impropriety to the satisfaction of the township's supervisory board, plaintiff "said that the only way to get out of this was he was willing to cease all training, which would harm the department and create havoc . . . [and] it would negatively affect the organization." This suggestion indicated that plaintiff was willing to put his own needs before those of the fire department that he was in charge of overseeing.

In support of his age discrimination claim, plaintiff states that he was asked about his retirement plans on a number of occasions. However, he admitted that questions about his retirement were only raised in meetings regarding "long-term planning for the Township." Plaintiff has provided no nexus between these planning meetings and his termination. Accordingly, plaintiff failed to present evidence showing that his termination came about "under circumstances giving rise to an inference of unlawful discrimination." *Hazle*, 464 Mich at 463.

## D. DEFAMATION

Next, plaintiff argues that he created a genuine issue of material fact with regard to his defamation claim. We disagree.

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Smith v Anonymous Joint Enter*, 487 Mich 102, 113; 793 NW2d 533 (2010)

(quotation marks and citation omitted). In Michigan, a claim for defamation requires proof of the following elements:

> "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." [*Sarkar v Doe*, 318 Mich App 156, 178; 897 NW2d 207 (2016), quoting *Smith*, 487 Mich at 113 (quotation marks and citation omitted).]

Defendants contend that plaintiff failed to plead with specificity by identifying the exact language that he believes was defamatory, and that, even if this Court were to find that plaintiff properly pleaded his claim, the language that allegedly caused plaintiff's injury was not defamatory. Conversely, plaintiff argues that he identified the exact defamatory language by stating that defendants informed several media outlets that he had resigned, when he had not done so. Plaintiff also argues that informing the media that he had abruptly resigned from his position as fire chief caused damage to his personal and professional relationships by implying to the public that he was guilty of wrongdoing.

"A plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory." *Ghanam v Does*, 303 Mich App 522, 543; 845 NW2d 128 (2014). Plaintiff failed to identify any specific language that he believed was defamatory in his original complaint. Instead, plaintiff simply accused defendants of making "statements that were false and/or knowing they had a probability of falsity . . . and which harmed [p]laintiff's reputation and deterred others from associating with him. . . ." At no point in the complaint did plaintiff give any specific details regarding the language that he believed was defamatory. Plaintiff's claim regarding defamation must fail because he did not plead the claim with specificity. *Id*.

## E. FALSE LIGHT

Finally, plaintiff argues that the trial court erred by granting defendants' motion for summary disposition with respect to his false light claim. We disagree.

Invasion of privacy claims protect against four specific types of invasions of privacy: "(1) intrusion upon the plaintiff's seclusion or solitude or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Doe v Mills*, 212 Mich App 73, 80; 536 NW2d 824 (1995). Plaintiff's claim is for false light invasion of privacy, and he bases it on statements made to various news outlets indicating that he had resigned from his position as fire chief.

> In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the

plaintiff in a false position. [*Duran v Detroit News Inc*, 200 Mich App 622, 631-632; 504 NW2d 715 (1993).]

Additionally, defendants "must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 69; 919 NW2d 439 (2018) (quotation marks and citation omitted).

Plaintiff argues that reporting to several media outlets that he had resigned was "unreasonable and highly objectionable" because it was a false statement that implied to the public that he had done something wrong. However, before making any statements to the media, defendants were under the impression that plaintiff had agreed to resign because after being asked to resign, plaintiff packed up the belongings he kept in his office and left his badge behind. Thus, the statement to the media that plaintiff had resigned was not patently false; rather, it was based on defendants' belief that plaintiff had, in fact, resigned. Further, plaintiff offers no evidence to show that informing the public that he had resigned was unreasonable or highly objectionable. Although plaintiff contends that the statements made to the media placed him in a false light, plaintiff does not explain how the statements negatively affected him. Plaintiff contends that the news of his resignation implied wrongdoing, but offers no proof that he actually suffered any harm as a result. Since there is no evidence that defendants' actions detrimentally impacted plaintiff, his contention that he was placed in a false light is mere speculation. Without further proof, the trial court did not err by granting defendants' motion for summary disposition.

Affirmed.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien